## John B. Rogan et al. v. Illinois Trust and Savings Bank, Receiver, et al.

1. STOCK—*Implied Warranty in the Sale of.*—The vendor of shares of stock in an incorporated company impliedly warrants in the sale of such stock that he has a good title to the same, and that they are genuine, but in the absence of fraudulent representations there is no other warranty.

2. SAME—*Liability of the Assignee of Shares of Stock.*—The assignee of stock in an incorporated company succeeds not only to the rights of the assignor, but in the event of the insolvency of the corporation he is liable to contribute to the payment of its debts in like manner as if he were an original subscriber to the stock.

3. REMEDIES—*No Cause of Action Arises upon a Misrepresentation of the Law.*—No cause of action arises or can be predicated upon a misunderstanding or misrepresentation of the law as to whether certain stock

in an incorporated company, being offered for sale, is or is not liable to assessment, as it is presumed that the law is equally within the knowledge of all parties.

4. INTEREST—*On Decrees for the Payment of Money.*—Where a decree is entered for the payment of a sum of money on a day named, the parties primarily liable for its payment are also liable for legal interest upon it from the day named for its payment.

**Bill to Enforce the Liability of Stockholders.**—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed January 15, 1901.

PADDOCK, WRIGHT & BILLINGS; HECKMAN, ELSDON & SHAW, and JOSEPH WRIGHT, attorneys for appellants.

WALKER & PAYNE, attorneys for appellees.

MR. JUSTICE HORTON delivered the opinion of the court.

For a general history of this case reference is made to the opinion filed herewith in the case of Morse et al. v. Gillette et al., *ante*, page 23.

All of the appellants were parties defendant to the original bill filed in this case January 19, 1891. They were all stockholders in the Los Angeles Cable Company and exchanged their stock in that company for stock in the Pacific Railway Company, share for share, which they held at the time said bill was filed. Each one of them also held, at that time, other stock in the Pacific Railway Company, which they had purchased from one of the personal appellees (hereinafter called vendors) after the exchange of Cable Company stock for Pacific Company stock.

By final decree of the Circuit Court the appellants were adjudged to be severally liable for $68 per share upon the Pacific Company stock held by them, respectively, and which they received in exchange for Cable Company stock, and to be severally primarily liable for a like sum upon each share of Pacific Company stock held by them, respectively, which had been purchased of the vendors. By the same decree the vendors were adjudged to be secondarily liable for a like sum per share upon the stock sold by them,

respectively, to appellants, and for which appellants were held to be primarily liable. Appellants were also adjudged to pay interest from August 1, 1898. To reverse said decree as to the appellants this appeal is presented.

As to so much of the decree as fixes the liability of appellants upon the stock received by them in exchange for Cable Company stock, except as to interest, there is now no question. The decision by the Supreme Court in the Sprague case (172 Ill. 149) settles that point, and it is so conceded by counsel.

The principal question presented for determination is whether the appellants or the vendors are primarily liable for the $68 per share found to be due upon the 230 shares of stock purchased by the former from the latter. That question is fairly presented by the pleadings.

The Sprague case and the case at bar are parts of one and the same suit. It was commenced by Charles F. Morse, a creditor. As before stated, all of the parties now here before this court were parties to the original suit as well as the Sprague appeal. As recited by the Supreme Court, " The entire stock of the Pacific Company was issued and exchanged for the stock of the Cable Company." The appellants and the vendors all being stockholders in the Cable Company and parties to the transaction changing the Cable Company to the Pacific Company are alike chargeable with knowledge of the facts relating to that transaction. As there was no stock issued by the Pacific Company, except in exchange for Cable Company stock, the appellants must be held to have notice of the fact that the stock purchased by them had been issued in consideration of the surrender of Cable Company stock and that it was issued without any further or other payment therefor or on account thereof. They knew the facts before they made the purchases.

Neither of the appellants met either of the vendors in connection with the purchase of stock. It is not contended that there was any representation whatever made to appellants, or either of them, by the vendors or either of them,

or by any person representing them, or either one of them. Appellants must have made the purchases upon their own information or knowledge as to the stock. They could not have made the purchases relying simply upon the statement in the certificate that the stock was "full paid and non-assessable." Doubtless all the parties supposed that it was non-assessable, but that was a mistake of law, not a mistake of fact. The appellants were, so far as this record shows, as familiar with the facts as the vendors were.

Counsel for appellants in their brief say that it was not believed, when the exchange of stock was made, that there was any liability upon the Pacific Company stock. Also, that five or six months after the Pacific Company was organized, appellants bought the stock "in good faith, for value, in the open market, from strangers, in the belief that it was full paid and non-assessable. The testimony shows their belief was strengthened by the opinion of lawyers and persons in authority, such as the president of the corporation, of whom inquiries were made in regard to the stock before it was purchased." That seems to us to be a correct statement. But it shows that appellants were not relying upon any misrepresentation or lack of knowledge as to the facts. They were relying upon the opinion of lawyers and others. They were not inquiring of lawyers what the facts were. They went to lawyers for an opinion as to whether there was a liability under the law. All the parties to this case are presumed to have equal knowledge as to the law. There is no testimony tending to show that the vendors suppressed any fact, or that they had knowledge of any fact of which the appellants were not also appraised.

Counsel say appellants purchased "for value, in the open market, from strangers." They, however, paid only from $25 to $32 per share. The court allowed as payment on account of said stock $32 per share. It was stock just issued by a new corporation which appellants purchased at less than one-third its par value, in the open market, from strangers. We are not impressed with the conviction that there is any equity in the contention that the vendors who

sold their stock in the open market at that price, without any representation made by or for them as to such stock, should be required to make good to the purchasers, who knew as much about the stock as the vendors did, all assessments subsequently levied upon such stock. Neither does the law, in our opinion, impose that obligation upon the vendors.

Not only is it presumed that the law is " equally within the knowledge of all parties " but no cause of action arises from or can be predicated upon a misunderstanding or mis-- representation of the law. Upton v. Tribilcock, 91 U. S. 45.

When the vendors sold to appellants the stock in question there was an implied warranty that they had good title thereto, and that it was genuine, but there being no fraudulent representations, there was no other warranty. Lowell on Transfer of Stock, Sec. 133; People's Bank v. Kurtz, 99 Pa. St. 344; Cunningham v. Spier, 13 John. 394; Strong v. Loeffler, 85 Ill. 73.

In Thompson on Corporations (Vol. 3) Sec. 3222, the general rule as to the liability of parties to the transfer of stock is concisely stated thus :

" The transferee succeeds not only to the rights but also to the liabilities of the transferrer. 　*　*　* In the event of the insolvency of the corporation, he is liable to contribute to the payment of its debts, in like manner as if he were an original subscriber."

See also in support of that general rule, Kellogg v. Stockwell, 75 Ill. 73; Thebus v. Smiley, 110 Ill. 321; Coleman v. Howe, 154 Ill. 458, 472; Webster v. Upton, 91 U. S. 65, 71.

No sufficient reason is apparent to relieve the appellants from the application of that rule.

By the decree entered July 1, 1898, it was provided that the owners of stock in the Pacific Company should pay to the appellee receiver within thirty days, $68 per share upon the stock held by them respectively, and that interest from and after the expiration of said thirty days should be paid upon sums payable but not paid within that time. By the decree appealed from it is provided that the appellants pay

interest at the rate of five per cent per annum from August 1, 1898, that is, from the expiration of said thirty days. Under the decree of July 1, 1898, the receiver was entitled to receive $68 per share and interest as provided.

The question thereafter contested was not as to the right of the receiver to collect such interest, but was as to whether the appellants were primarily liable to pay the amount assessed upon the stock purchased by them from the vendors. We see no good reason why interest should not be paid as decreed. Appellants being found to be primarily liable, it follows that they should pay it.

The decree of the Circuit Court is affirmed.