LILES, Acting Chief Judge.
Appellant, Claude MacPhee, brings this appeal from an order denying revocation of the will of C. Minnie MacPhee, deceased.
On February 28, 1961, C. Minnie Mac-Phee executed a will in which she designated William O. Rast, appellee herein, as executor and beneficiary of one-half of her estate. On March 5, 1961, at the age of 88 years, and five days after executing the will, C. Minnie MacPhee died leaving as a survivor Claude MacPhee. The deceased and Claude MacPhee’s father, J. D. MacPhee, had married when Claude MacPhee was a child of tender age, and for all intents and purposes the deceased was the only mother he ever knew.
Prior to her death, Mrs. MacPhee had been residing in a nursing home, and she had given William O. Rast power of attorney and relied upon him for advice and business needs. The day she executed the will she also executed a deed to William O. Rast and his wife conveying real estate which constituted the deceased’s “home-place.” She received in return therefor an $8,000.00 purchase money mortgage and a personal note in the amount of $2,000.00. There had been various and sundry other business transactions between Mrs. Mac-Phee and Mr. Rast, most of which were to the personal benefit of Mr. Rast.
Appellant Claude MacPhee brought proceedings to revoke the will on the ground of undue influence. The cause went to trial before the county judge of Lake County, and several volumes of testimony were adduced. This court has studied all the testimony in great detail, realizing that the charge of undue influence is most illusive and difficult to ascertain.
It is well settled that if a beneficiary occupies a confidential relationship with the testator and is active in procuring the will and is made a substantial beneficiary therein, a presumption of undue influence arises. Zinnser v. Gregory, 77 So. 2d 611 (Fla.1955); In re Reid’s Estate, 138 So.2d 342 (D.C.A.Fla.1962). Mr. Rast was made a substantial beneficiary under the will. He occupied a confidential relationship with the deceased as he had her power of attorney and carried on considerable business transactions with and for her. As for the procurement of the will, the evidence revealed that Mr. Rast carried the information as to what the will was to provide to the drafter of the will. Mr. Rast then brought the will to Mrs. MacPhee for her execution and secured the necessary witnesses. There can be little doubt that Mr. Rast was active in the procurement of the will. The presumption of undue influence arose, and the burden of overcoming this presumption shifted to Mr. Rast.
To overcome this presumption is again made more difficult by the fact that Mrs. MacPhee was an elderly lady and had recently lost her husband. The evidence also indicates that she was not endowed with any particular business acumen and that she showed no great amount of self-determination either before or after the death of her husband. Therefore, we believe that with the creation of a strong presumption of undue influence, it necessarily follows that there must be a strong showing that no undue influence was in fact exerted upon Mrs. MacPhee.
The only evidence adduced, aside from the testimony of Mr. Rast, did not in fact show how Mrs. MacPhee arrived at her decision to leave one-half of her estate to Mr. Rast. Likewise, there was no clear evidence that she was aware of the exact contents of the will. Both Mr. Rast and a Mr. Barlow, who witnessed the will, testified that Mrs. MacPhee stated generally that that was the way she wanted it.
Another witness testified that Mrs. Mac-Phee had related to her that she wanted Mr. Rast to have her home, and that she had heard Mrs. MacPhee say that Mr. Rast had been good to her and she wanted to do something for him. Then another witness *681 testified that he had visited Mrs. MacPhee at the nursing home and stated:
“Q During this conversation with her did she talk to you about her affairs in any manner ?
A I don’t believe she said very much about them, maybe she mentioned something about how nice Mr. and Mrs. Rast had been to her since her husband’s illness, and I think she made one statement that she would like to see him have everything and that she felt that was what her hus- , band wanted.” (Emphasis added.)
We do not believe that this and other testimony, which we have very diligently studied, is sufficient to overcome the strong presumption of undue influence.
There does not exist in Florida case law anything other than very general guidelines as to what does or does not constitute undue influence and the rule that each case must be decided individually. We believe, however, that a better practice to follow (and particularly in the instant case) would have been for the author of the will to have secured the services of a physician and visited with the deceased first to determine that she was capable of making an independent decision; secondly, that she knew who was to be the beneficiary of one-half of her estate; and then determining objectively that this was her desire. This was even more important in view of the fact that Mr. Rast may have had no intention of exerting undue influence upon Mrs. MacPhee but by the very nature of the association he had with her; the visiting with her during the time she was in the nursing home and even while she still resided at her homeplace; and the fact that he accepted the task of becoming her business adviser through the power of attorney and that she came to rely more and more upon him as time went on created the grounds for a presumption of undue influence difficult to overcome. All of these facts without a clear showing to the contrary would, we think, make it important that the author of the will make, sure he would be in a position to show that Mrs. MacPhee both knew and desired to act as she did.
For the foregoing reasons we reverse the order denying revocation of probate and direct the trial judge to enter his order granting the petition to revoke the will of C. Minnie MacPhee.
HOBSON and PIERCE, JJ., concur.