212 So.2d 74 (1968)
In re ESTATE of Winnie SMITH, Deceased.
No. 1498.
District Court of Appeal of Florida. Fourth District.
June 26, 1968.
Albert N. Fitts, Sanford, for appellant Versa Woodcock.
C. Vernon Mize, Jr., of Cleveland & Mize, Sanford, for appellee Mack N. Cleveland, Jr., as administrator.
OWEN, Judge.
This is a will contest case. Appellant as beneficiary under a prior will, sought revocation of the order of probate of a later will on the grounds that such will was void because the execution thereof was procured through undue influence on the part of the principal beneficiaries, George David Smith and his wife, Elizabeth. From an order of the county judge's court denying the petition for revocation, this appeal was taken.
At the hearing before the county judge the proponent of the will made a prima facie showing of the formal execution and attestation thereof, thereby causing the burden of proof to shift to the will contestant to establish the facts constituting the grounds upon which the revocation was *75 sought.[1] Appellant, acknowledging that she then had such burden of proof, sought to establish undue influence through the presumption which arises by law when a beneficiary under a will occupies a confidential relationship with the testator and is active in procuring the will.[2] At the close of the appellant's case the court ruled that although the principal beneficiaries, George David Smith and his wife, Elizabeth, might be said to occupy a confidential relationship with the testatrix, the evidence failed to establish that they had actively procured the execution of the will and hence the presumption of undue influence did not arise. The question resolves itself into whether under the facts of this case the county judge was correct in ruling that the principal beneficiaries had not actively procured the execution of the will.
At the time of her death in January, 1965, the decedent was a 74-year-old widow. She had executed a will in August, 1961, in which the appellant, Versa Woodcock, was a beneficiary to the extent of $2,000.00 and also named as executrix. In May, 1964, Mrs. Winnie Smith was living as a paying care patient in the home of Mrs. Anne Starnes in Sanford, Florida. At that time Mrs. Smith became upset by something she thought Versa Woodcock had done, whereupon she requested Mrs. Starnes to place a telephone call to her stepson, George David Smith, who resided in or near Atlanta, Georgia. The stepson was finally located and in the telephone conversation Mrs. Winnie Smith asked her stepson to come to Florida stating to him that she had some important business that had to be taken care of right away. Mrs. Winnie Smith told Mrs. Starnes that she had asked her stepson to come down to Sanford, Florida and that he had agreed to come down in a few days. At that time she also stated to Mrs. Starnes, "David is all I got and I don't know why I left him. He was so good to me.", referring to some earlier date when she had lived with her stepson in Atlanta.
As a result of the telephone call, David and his wife, Elizabeth, and their child came to Sanford, Florida, a few days later. After spending several hours reminiscing, Mrs. Winnie Smith, indicated that the nature of her urgent business was to revise her will. She apparently intended initially to have the will written in longhand, as she asked Mrs. Starnes to help write, but Mrs. Starnes suggested that Elizabeth Smith was used to office work and could do it much faster. Thereupon, Elizabeth Smith wrote the will in longhand while Mrs. Winnie Smith sat in front of Elizabeth telling her what to write. George David Smith was in and out of the room occasionally and at one time suggested that one of the bequests be changed to $100.00 rather than $1.00. Other than this he apparently had very little to do with the handwritten will. That instrument was apparently signed and witnessed shortly after it was prepared. George David Smith and his wife and child then left Sanford and went to Daytona Beach for the weekend returning on Monday or Tuesday. At that time Mrs. Winnie Smith indicated that there were one or two more changes she still wanted to make in the will as a consequence of which Elizabeth Smith again was called upon for the task of writing in longhand the revision as instructed by Mrs. Winnie Smith. The handwritten will executed a few days before was then discarded. George David Smith went to the office of a local lawyer, Douglas Stenstrom, Esquire, requesting *76 that he come to Mrs. Smith's residence for the purpose of preparing her will. Mr. Stenstrom was unable to go but advised that he could prepare the will in his office if he had instructions from the testatrix, after which George David Smith returned a short time later with the revision of the handwritten will. Mr. Stenstrom then prepared the will in accordance with the handwritten version furnished him upon assurances that the notes were in Mrs. Winnie Smith's own handwriting. There is a conflict in the testimony as to whether Mr. Smith then took the typewritten draft of the will from the lawyer's office, or whether he drove Mrs. Winnie Smith to the lawyer's office where she obtained the document. In any event, the typewritten will was executed at the Starnes' residence with Mr. and Mrs. Starnes and their married daughter as witnesses. There was no showing that George David Smith and his wife secured these witnesses or were present when the will was executed. While there were also conflicts in the testimony as to the manner in which the typewritten will was executed, and whether Mrs. Winnie Smith was aware that such was her will, there was sufficient competent evidence to sustain the trial court's finding that the will was executed in the manner required by law. The executed will was kept by Mr. Stenstrom until the testatrix' death seven months later.
We are concerned with the proper construction to be put on the phrase "active in procuring the will" so as to raise the presumption of undue influence.
In re Peters' Estate, 1945, 155 Fla. 453, 20 So.2d 487, was a case in which the principal beneficiary was a physician and a long-time friend of a 77-year-old widow. Her physical strength was reduced in keeping with her years but her mentality was not shown to have declined. The only connection which the physician had with the procuring of the will was in being present on the occasions when the testatrix expressed her desire to make a will and when she gave here attorney instructions on making the will. The court stated that the law should require a more active or definite participation than this in order to raise the presumption.
In Sturm v. Gibson, Fla.App. 1966, 185 So.2d 732, the beneficiary had been a ranch foreman for the testatrix and had occupied the same dwelling house with the deceased for some time prior to her death. His activity consisted of recommending the attorney who drew the will and driving the testatrix to the lawyer's office, but he was not present when the will was executed nor did he know its contents until the death of the testatrix. The court held that this activity was not active procurement of the execution of the will.
In re Knight's Estate, Fla.App. 1959, 108 So.2d 629, involved the testator's wife and brother as the principal beneficiaries. Before the testator went to the hospital he informed the brother of his wishes as to the contents of his proposed will, after which the brother consulted a firm of attorneys, gave them the instructions for the preparation of the will, received the draft thereof and kept it in his possession until it was presented to the testator at the hospital. The brother assisted in procuring the formal witnesses to the will, was present when it was executed, received it from the testator and kept it in his possession until it was presented for probate. The court held that this was active procurement of the execution of the will sufficient to raise the presumption of undue influence.
In re Estate of MacPhee, Fla.App. 1966, 187 So.2d 679, concerned a testatrix who was 88 years of age when she executed her will five days prior to her death. The principal beneficiary, Rast, held her power of attorney and was her business adviser. Some of these transactions were between the testatrix and Rast, most of which were to the personal benefit of Rast. Mr. Rast carried to the attorneys information as to what the will was to contain, brought the will to Mrs. MacPhee for execution, and secured the necessary witnesses. The court held that this was an active procurement of the will.
*77 While the facts in the case at bar show more active physical participation in connection with the execution of the will than was shown in either the Peters case or the Sturm case, such activities fall short of those which occurred in the Knight case and the MacPhee case.[3] Here, the testatrix had already decided to revise her will and had conceived her testamentary scheme before she contacted George David Smith by telephone. He and his wife came to Sanford only at the expressed request of the testatrix. Elizabeth Smith wrote the first draft of the proposed revised will in longhand at the request of the testatrix only after Mrs. Starnes demurred. The evidence is clear that the principal beneficiaries' sole participation was limited to making longhand notes which the testatrix felt unable to do, and securing the services of an attorney to have the proposed will placed in what was undoubtedly a more proper form. These were perfunctory physical activities. They were necessary to effectively carry out the desire of the testatrix to revise her will. The testamentary revision, the presence of the beneficiaries in the testatrix' home and the participation in making longhand notes, were all shown to have originated with the testatrix.
We agree with the court below that under the circumstances this limited participation on the part of George David Smith and his wife, Elizabeth, who occupied a confidential relationship to the testatrix and who were substantial beneficiaries under her will, was not such an active procurement of the will as would be sufficient to raise a presumption of undue influence under the case law of this state.
We have examined the other points raised by appellant but find that they neither demonstrate error nor warrant discussion.
The order denying the revocation of probate is affirmed.
CROSS and REED, JJ., concur.
NOTES
[1] "§ 732.31 Burden of proof in contests.  In all proceedings contesting the validity of a purported will, whether before or after such will is admitted to probate, the burden of proof, in the first instance, shall be upon the proponent thereof to establish, prima facie, the formal execution and attestation thereof, whereupon the burden of proof shall shift to the contestant to establish the facts constituting the grounds upon which the probate of such purported will is opposed or revocation thereof is sought." (F.S. 1967, F.S.A.)
[2] Zinnser v. Gregory, Fla. 1955, 77 So.2d 611; In re Palmer's Estate, Fla. 1950, 48 So.2d 732; In re Knight's Estate, Fla.App. 1959, 108 So.2d 629.
[3] Compare In re Reid's Estate, Fla.App. 1962, 138 So.2d 342.