297 So.2d 54 (1974)
In re Joseph F. SIDDONS, Sr., Deceased.
Helen SIDDONS et al., Appellants
v.
Robert F. SIDDONS, As Executor for the Estate, Appellee.
No. 73-1380.
District Court of Appeal of Florida, Third District.
June 26, 1974.
Rehearing Denied July 18, 1974.
Carl H. Hoffman, Miami, for appellants.
Talbot W. Trammell, Miami, for appellee.
Before BARKDULL, C.J., and HENDRY and HAVERFIELD, JJ.
*55 PER CURIAM.
This is an appeal from an order of the probate division of the circuit court denying a petition for revocation of probate of the will of Joseph F. Siddons, Sr.
The order appealed is set forth in full as follows:
"This cause came on to be heard on the amended petition for revocation of probate and the response thereto; after having heard sworn testimony and argument of counsel the Court makes the following findings of fact and conclusions of law:
"Petitioners for revocation are Helen Siddons, ex-wife of testator and mother of the three other petitioners. They seek to revoke the Will on the ground that the testator lacked the mental and physical capacity to knowingly execute his Last Will and Testament on October 8, 1971, along with documents executed at that same time, and on the further ground that the respondent, Joseph Francis Siddons, exercised undue influence upon the testator. These allegations are denied in the response to the petition.
"Testator, Joseph F. Siddons, Sr., died November 24, 1971, at the age of sixty-one. On October 8, 1971, he executed his Last Will and Testament and at the same time executed four declarations of trust and quitclaim deeds. The pertinent portion of the Will admitted to probate is as follows:
`SECOND: All the rest, residue and remainder of my estate, both real and personal, of whatsoever kind or character, and wheresoever situated, shall be distributed among my four (4) children as directed by me in Declarations of Trusts filed by me in the States of Florida and North Carolina.
 `My Children being:
 Robert Francis Siddons,
 Joseph Francis Siddons, Jr.,
 Dolly Siddons Fried, &
 Grace Judith Siddons Triplett.'
"In drawing his Will testator, apparently, was a `do-it-yourself' type individual and conceived of the deeds of trust, along with his Will, to dispose of his property on his death. There were four children, two boys and two girls; Helen Siddons, one of the petitioners, was the natural mother of the four children but she and testator had been divorced for a number of years. She makes no contention that she is entitled to any of the benefits of the Will, or the declarations of trust. Some property is left to each of the children but, though no testimony was received relative to the value of the respective parcels, it was indicated that the property left to the executor, the eldest son, Robert Francis Siddons, was Dade County property and the most valuable of all the other parcels. The petitioners contend that the Will is not valid and that the property should descend equally to all.
"Testator in January of 1971 had sustained a severe illness causing him to have to spend some time in the hospital, which left him partially paralyzed, but at the time he executed his Will in October he had been living with his eldest son for some months prior to his death. The Will was executed in the home of Robert Francis Siddons; it was typed up by his wife and, although there was dispute as to whether or not Robert Francis Siddons procured witnesses, it is reasonable to expect that he may have well requested witnesses to be present at the execution of the Will and other instruments.
"On the question of competency of testator, there is ample testimony from neighbors and a disinterested friend of testator, who had no interest whatsoever in the outcome of this cause, to conclude that he was competent. One neighbor testified that she saw testator frequently during October and described him as very alert and a well oriented individual, although not completely recovered physically from his partial paralysis. He was able to ambulate on his own and was *56 completely coherent in his conversations with her. Another witness, who owed testator money, testified that he paid him the debt that he owed testator approximately a week prior to execution of the Will after testator had calculated the interest due on the debt. Then, approximately one week subsequent to that  which would place this either the day of or the day before or after execution of the Will  testator came to his house and visited with the witness for several hours. This witness conceivably described testator's condition to be normal, no impairment of his memory and fully cognizant of his business affairs. Consequently, I find that testator was mentally and physically competent to execute his Last Will and Testament on October 8, 1971.
"On the question of undue influence; undoubtedly, there was a close relationship between testator and his oldest son, Robert Francis Siddons. Testator expressed on numerour occasions his fondness for his daughter-in-law, the wife of his oldest son. He had been partially paralyzed from his sickness earlier in the Year 1971 and in making his recovery he had spent much of that time in the home of his eldest son. His daughter-in-law had administered to him faithfully and certainly assisted in helping him in his recovery. Testator was a strong-willed, self-determined individual. He was not easily persuaded to do anything that he was not convinced that he didn't want to do. He, apparently, did not desire to enlist the aid of an attorney to draw his Will and proceeded to effectuate the disposition of his property on his demise by these declarations of trust referred to in the Will. It is true his daughter-in-law did type up these instruments. She readily admitted this but both she and her husband emphatically denied that they at any time suggested or had any part whatsoever in determining the provisions of the Will and the declarations of trust.
"All of the children shared in some of the property, although, as has been suggested, the property devised to Robert Francis is more valuable than all the other property.
"Considering all of the testimony, and with the backdrop of the circumstances surrounding testator in the execution of the Will, it is the conclusion of the Court that if Robert Francis Siddons is to be considered a major benefactor of his father's Will, as measured against the other children, and participated actively in the procurement of the Will, as set forth in this order, I find that he has satisfactorily explained the surrounding circumstances of the part that he has played in the execution of this Will to have been such as to not constitute any undue influence on his part over his father to gain any undue advantage as a beneficiary under the Will. Accordingly, it is thereupon
"ORDERED AND ADJUDGED that the amended petition for revocation of probate is hereby and herein dismissed with prejudice."
The petitioner-appellants raise three points on appeal. First, appellants urge as error the exclusion of testimony by the appellee, Robert F. Siddons, the testator's son, who was called as an adverse witness by the appellants.
The probate judge did not permit testimony by the appellee on four different questions which were propounded. Appellee's counsel objected to each question on the grounds that any testimony might relate to a transaction or occurrence between the appellee and the testator, his father, in violation of Fla. Stat. § 90.05, F.S.A., the Dead Man's Statute.
It is now conceded by the appellee that the testimony would not have violated the statute, and the court should have permitted a response to the question. However, appellee argues that the order appealed still *57 should not be reversed because the error was harmless. See, Fla. Stat. § 59.041, F.S.A. We agree.
An appellate court will not reverse an order or judgment of the trial court which is based on substantial competent evidence, unless from the record it affirmatively appears that any error committed affected the substantial rights of a complaining party and resulted in a miscarriage of justice. Kaufman v. Rubin, Fla.App. 1966, 183 So.2d 284; Demmy v. Sligh, Fla.App. 1966, 189 So.2d 843; Anthony v. Douglas, Fla.App. 1967, 201 So.2d 917.
Our review of the record convinces us that the probate court conducted a full and a fair hearing, and the court's findings of fact and conclusions of law are supported by the record.
The appellants' second and third points are interrelated. They question whether or not the appellants presented facts establishing a presumption of undue influence and whether or not the appellee adequately explained his role in the execution of the declarations of trust and the will involved in this case.
We point out that the burden of proof did not shift from the appellants, and at all times, it was incumbent upon the appellants to prove undue influence by the greater weight of the evidence. In Re Estate of Carpenter, Fla. 1971, 253 So.2d 697.
From a reading of the probate judge's order, it is clear that the court concluded that the appellee met his burden of coming forward with an explanation of his role in the execution of the will, even assuming that a presumption of undue influence had been proved.
Testimony from neighbors as well as the appellee and his wife revealed that the testator was mentally alert at the time of execution on October 8, and that he was generally a "strong-willed, opinionated, self-determined character."
The evidence further reflected that the will and the declarations of trust were prepared from forms which appeared in the book "How to Avoid Probate," and the legal descriptions of the property which the testator placed in trust were supplied by the appellee.
As indicated in the probate judge's order, the property which appellee and his wife received apparently was more valuable than the property which the testator gave to his other children. The appellee's wife also typed the forms comprising the will and declarations of trust, and for some time prior to the execution appellee and his wife lived with the testator. In addition, the appellee may have secured the witnesses to the will. Added together, we fail to see that these facts establish an active procurement of the will. In our view, the acts of the appellee and his wife were simply "perfunctory" in nature and were insufficient to raise a presumption of undue influence. See, In Re Smith, Fla.App. 1968, 212 So.2d 74.
The appellee testified that he did not keep the will subsequent to the execution, but that the testator retained it among his personal effects. Additionally, the appellee stated that he notified the other beneficiaries of the will approximately one month after the execution, some two weeks before the testator died.
Therefore, for the reasons stated and upon the authorities cited, the order appealed is affirmed.
Affirmed.