526 So.2d 141 (1988)
Carl Ray CARTER, Jr., a Beneficiary of the Estate of Catherine S. Carter, Appellant,
v.
David Ray CARTER and Virginia Carter, Appellees.
No. 87-2216.
District Court of Appeal of Florida, Third District.
May 17, 1988.
Rehearing Denied June 30, 1988.
Richard H.W. Maloy, Coker, Meyers & Schickel and J. Thomas McKeel, Jacksonville, for appellant.
Mark T. Juanico, North Miami, for appellees.
Before SCHWARTZ, C.J., and HENDRY and NESBITT, JJ.
*142 NESBITT, Judge.
Carl R. Carter, Jr. appeals the revocation of his mother's will on the grounds of undue influence. We reverse.
In 1971, the testatrix executed a will which left the residue of her estate to her three sons in equal shares per stirpes. In 1975, she added a codicil which eliminated the one-third share to son Carl and divided it equally among him, his former wife, Virginia, and their four children, one of whom is appellee David Carter. In 1983, the testatrix executed the will at issue which returned to the dispository scheme of the original will. She died in 1985. This petition was brought to revoke probate of the 1983 will because of undue influence David and Virginia claimed Carl and his brother James held over their mother when that will was executed. After a hearing the 1983 will was revoked, the trial judge finding that the testatrix was under the undue influence of her sons when she signed the will.
Considering all the circumstances of this case, we find that any influence which the sons may have had on their mother was not "undue," and we thus reverse the trial judge's order revoking the will.
To prove undue influence in the procurement of a will, the will contestant must establish three elements. It must be shown that the respondent: (1) occupied a confidential relationship with the testator, (2) was a substantial beneficiary under the will, and (3) was active in procuring the will. In re Estate of Carpenter, 253 So.2d 697 (Fla. 1971). Appellants concede that they had a confidential relationship with their mother but claim appellees did not prove the remaining two elements of undue influence.
First, as to whether the sons were made substantial beneficiaries under the contested will, it is clear that James was not. Carpenter requires that the person said to have exerted undue influence must have been made a substantial beneficiary as a result of the contested will. 253 So.2d at 701. Because James received the same one-third share under all three wills the testatrix executed, appellees could not establish that he became a substantial beneficiary as a result of the 1983 will. And while it is arguable that Carl did become a substantial beneficiary as a result of the contested will, but see In re Estate of Yelvington, 280 So.2d 497, 499 (Fla. 1st DCA), cert. denied, 287 So.2d 93 (Fla. 1973), this element is not controlling here.
The issue of undue influence by a third person is equally irrelevant to resolution of this case. Appellees argued below that even if James did not become a substantial beneficiary, it was through his undue influence that Carl obtained substantial benefits. To support this contention, they cite the case of Little v. Sugg, 243 Ala. 196, 8 So.2d 866 (1942), which held that a person who procures a will in order to favor the interest of a third person may still be guilty of undue influence even though he himself was not made a substantial beneficiary. We find, however, that appellees did not prove that James's actions, nor those of Carl, together or individually amounted to active procurement as required by Carpenter, 253 So.2d at 701.
Apparently, the wills of James's and Carl's mother and father were changed in 1975 as a result of their disapproval of Carl's divorce from Virginia. An underlying motive may well have been to insure that Carl's and Virginia's children would receive their portion of the estate. After his father's death in 1983, James, who was named personal representative of his father's estate, came to Miami from his home in Jacksonville to handle the probate of that will. By that time he had assumed management of the family business affairs due to his parents' advancing years. They both had come to look to him for assistance. Not surprisingly, he asked his mother her wishes in regard to any changes she wanted made in her will. By then, eight years had passed and the trauma and disappointment caused by the divorce had had time to subside. He told her that shortly before his death, his father had indicated a compelling need to change his will back to its original form but that because he died suddenly, had not been able. James testified that he discussed the subject with his mother because he felt it was *143 unfinished business which his father would have wanted him to take care of. His mother then told him to change her will accordingly. When viewed in this context it was quite natural, and certainly not intrusive, for James to discuss with his mother any changes she might desire in her will. If an adult child, in James's position, cannot talk to his parent about this, then we have finally demolished the family ties of love and natural affection.
Upon returning to Jacksonville, he had his attorney draw the will up following his mother's directions. He then returned it to her in Miami where they went over it. He left it at her house for her to consider further. Carl, who lived in Dade County, some days later took his mother to the office of an attorney near her home where she signed the will in the presence of disinterested witnesses.
Once the familial situation has been brought into proper focus, it is clear that the actions of James and Carl in executing the will were "perfunctory physical activities" rather than active procurement. In re Estate of Siddons, 297 So.2d 54 (Fla. 3d DCA), cert. denied, 304 So.2d 125 (Fla. 1974); In re Estate of Smith, 212 So.2d 74 (Fla. 4th DCA 1968). Theirs were the acts of dutiful sons who helped their mother draw up her will and execute it. She was aging and needed helpful information and even advice. Her sons were shown to maintain constant contact with their mother. James handled her financial affairs; Carl made repairs around her home. Both saw that her physical needs were met.
While we readily acknowledge that there will be instances in which a child or parent may unduly influence one or the other in procuring a will, we hold that on the facts of this case, neither the conduct of Carl nor that of James amounted to undue influence.
Accordingly, we reverse the final judgment below and order the trial court to admit to probate the 1983 will.