634 So.2d 667 (1994)
Richard L. JACOBS, Appellant,
v.
Judith L. VAILLANCOURT, individually and as trustee, and Robin A. Vaillancourt, Appellees.
Nos. 92-04085, 93-00365.
District Court of Appeal of Florida, Second District.
March 2, 1994.
Rehearing Denied March 31, 1994.
*668 George F. Wilsey, Fisher and Wilsey, P.A., St. Petersburg, for appellant.
Joseph W. Fleece, III and James D. Eckert, Belcher, Fleece & Eckert, and Richard T. Earle, Jr., Earle and Earle, St. Petersburg, for appellees.
SCHOONOVER, Judge.
The appellant, Richard L. Jacobs, challenges a final judgment upholding the validity of certain instruments executed by him and his deceased wife Cecil, a/k/a Cecile F., Jacobs. Mr. Jacobs has also, by a separate appeal, challenged final orders directing that certain attorney's fees and costs be charged against a trust created by Mr. and Mrs. Jacobs. We have consolidated these appeals, and because we find that the trial court did *669 not commit reversible error in any of its rulings, we affirm in all respects.
Mr. and Mrs. Jacobs were married in 1951. At the time of their marriage, Mrs. Jacobs had a daughter from a previous marriage. This daughter, Judith, is the wife of Robin Vaillancourt the attorney who prepared the instruments which are being challenged in this action.
During the course of the Jacobs' marriage, they had acquired an estate worth more than $700,000. Most of the estate was titled in their names as an estate by the entireties or as joint tenants with the right of survivorship.
Although there was conflicting evidence concerning many of the events which led up to the institution of this action, the trial court found certain facts existed, and we find sufficient evidence to support those findings. On Friday, November 8, 1991, Mrs. Jacobs was released from the hospital having been diagnosed with terminal cancer. At that time, it was not certain that she would live through the weekend. Early Sunday morning, November 10, 1991, at Mrs. Jacobs' request, Robin Vaillancourt went to the Jacobs' home to discuss the Jacobs' estate plan with them. In general terms Mrs. Jacobs told Mr. Vaillancourt that she wanted her husband and herself to be taken care of during their lives, and then Judith, who was to be the trustee, should receive anything left over. When he was asked by Mr. Vaillancourt if he agreed to the proposed plan, Mr. Jacobs replied that Mr. Vaillancourt should do whatever Mrs. Jacobs wanted.
Mr. Vaillancourt spent most of the day researching, drafting, and locating secretarial help to complete the instruments he determined would be of benefit to Mr. and Mrs. Jacobs. He prepared an irrevocable inter vivos trust agreement naming Judith as trustee and providing income to the settlors, or the survivor of them, an irrevocable joint and mutual will pouring over Mr. and Mrs. Jacobs' assets into the irrevocable trust, and a deed conveying the marital home to the trust.
Mr. Vaillancourt then returned to the Jacobs' home and, in the presence of five witnesses, reviewed these documents with Mr. and Mrs. Jacobs. The documents were then properly executed by Mr. and Mrs. Jacobs, and later the trust agreement was signed by Mrs. Vaillancourt as trustee. While executing the documents, Mr. Jacobs indicated that he was doing it for his wife.
Later the same day, Mr. Jacobs told a friend that he intended to see his lawyer, have his wife declared senile, and have all of the documents that had been executed that day voided. The next day, Monday, November 11, 1991, he said that he had certain bearer bonds which he did not want anyone to know about and attempted to go to his safe deposit box. The bank was closed for Veteran's Day but he did enter his safe deposit box the next day, November 12, 1991.
A.G. Edwards prepared the stock transfer documents necessary to place the parties' stock into the irrevocable trust, and the instruments were executed at the Jacobs' home on November 14, 1991. While the documents were being executed, Mr. Jacobs indicated that he was signing them under duress. Mr. Vaillancourt told him that he did not need to sign the documents if he was not comfortable doing so. At that point, Mrs. Jacobs said "Richard, this is what we agreed to." Mr. Jacobs replied, "Yes, you're right," and signed the documents.
Mr. Jacobs consulted with an attorney prior to Mrs. Jacobs' death on December 6, 1991. He filed a complaint against Mr. Vaillancourt with The Florida Bar on December 9, 1991, and the instant action was commenced a short time thereafter.
Mr. Jacobs' amended complaint contained six counts. The complaint sought to void the trust, will, and deed on several grounds and also sought damages against Mr. and Mrs. Vaillancourt. Mr. Jacobs sued Mrs. Vaillancourt both individually and as trustee. The amended complaint sought damages for breach of fiduciary duty and also requested that the documents be set aside because they were, among other things, procured by duress, fraud, or undue influence, or because the decedent was not competent at the time they were executed.
*670 At the conclusion of the nonjury trial held in connection with this matter, the trial court found in favor of Mr. and Mrs. Vaillancourt on the damage claims and held that all of the documents were valid. Mr. Jacobs filed timely notices of appeal from the final judgment entered in this matter and the subsequent order awarding costs and attorney's fees.
In this appeal, Mr. Jacobs does not contest the trial court's denial of most of his claims, including the claim that he was under duress at the time he executed the documents. Mr. Jacobs contends that the instruments are voidable because they were obtained by Robin Vaillancourt without fulfilling his fiduciary duty to Mr. Jacobs. He also contends that the documents are voidable because of undue influence. We disagree with both contentions.
The appellant takes the position that the documents in question were obtained through the activities of Robin Vaillancourt acting in the furtherance of the interests of himself, his wife, and Mrs. Jacobs. Mr. Jacobs contends that because Mr. Vaillancourt did not fulfill his fiduciary duty to him, Mr. Jacobs is entitled to void the documents.
We agree that a fiduciary relationship existed. It is not necessary for us to hold that a fiduciary relationship is implied as a matter of law any time a family member asks an attorney who is related, directly or indirectly, to assist them. In this case, the evidence supports a finding of a fiduciary relationship as a matter of fact.
The term "fiduciary or confidential relation," is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused-in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another.
Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 420-421 (Fla. 1927). See also Atlantic Nat'l Bank v. Vest, 480 So.2d 1328 (Fla. 2d DCA 1985), rev. denied, 491 So.2d 281 (Fla. 1986), and rev. denied, 508 So.2d 16 (Fla. 1987); Williams v. Hunt Bros. Constr., Inc., 475 So.2d 738 (Fla. 2d DCA 1985). An informal type of fiduciary relationship may exist under a variety of circumstances and does exist in cases where there has been a special confidence reposed in one, who in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. Vest. It in fact exists where confidence is reposed on one side and there is resulting superiority and influence on the other. The relations and duties involved need not be legal, but may be moral, social, domestic, and merely personal. Vest. Mr. Vaillancourt had performed legal services for Mr. and Mrs. Jacobs in the past, admitted that he was acting as an attorney for the Jacobs at the time he prepared the documents in question, and was bound to act in good faith in advising the Jacobs who placed their confidence in him. Based on the record presented to us, a fiduciary relationship existed. See, Phipps; Vest; Williams.
The trial court in its amended final judgment held that Mr. Vaillancourt was only carrying out the expressed wishes of the Jacobs, his actions were no more than perfunctory activities, and his conduct did not rise to active procurement. Although it appears that these conclusions were contrary to the finding that a fiduciary relationship existed, the court made those findings in connection with the element of active procurement in its discussion of undue influence and not in connection with Mr. Jacobs' claim of breach of fiduciary duty. See In re Smith, 212 So.2d 74 (Fla. 4th DCA 1968).
The fact that a fiduciary relationship existed does not, however, require a reversal. In order to prevail on this point of his appeal, Mr. Jacobs would have to establish that Mr. Vaillancourt breached his duty, and the record does not support such a conclusion. Mr. Vaillancourt owed a duty to Mr. and Mrs. Jacobs and there was no material breach of that duty.
Mrs. Jacobs asked Mr. Vaillancourt to assist her and Mr. Jacobs in an estate plan. Mr. Jacobs agreed with this plan, and according to Mr. Vaillancourt and an expert witness, the instruments at issue were necessary *671 to accomplish what the Jacobs requested. As discussed above, Mr. Vaillancourt had a fiduciary duty to Mr. Jacobs and therefore had a duty to inform him of the nature and consequences of the instruments. See Gomez v. Hawkins Concrete Constr. Co., 623 F. Supp. 194 (N.D.Fla. 1985). Although the evidence was conflicting, there was evidence from which the court could find that the nature and consequences of the instruments were explained to Mr. Jacobs. The evidence establishes that he understood enough of what was going on to tell a friend he was going to try and set the instruments aside and later to claim he was under duress at the time he executed instruments necessary to transfer certain property to the trust created by Mr. Vaillancourt.
Although the court found that Mr. Vaillancourt did not breach a fiduciary duty, even if we assume that Mr. Jacobs was not fully informed of the nature and consequences of the instruments prepared by Mr. Vaillancourt, Mr. Jacobs would only be entitled to recover if he established that the nondisclosure caused damage to him. See Gomez. The evidence establishes that Mr. Jacobs was not pleased with the instruments prepared by Mr. Vaillancourt, but it also established that he was not under legal duress at the time he ratified the acts of which he now complains. The evidence was sufficient to support a finding that Mr. Jacobs would have and did do whatever Mrs. Jacobs wanted and although he did not want to execute these documents he now complains of he did so because of his wife and not because of Mr. Vaillancourt. He did not complain of the instruments and their effect when presented to him or when discussing them with his wife and cannot do so now. We, accordingly, find that the trial court correctly held that Mr. Jacobs did not establish his claim of breach of fiduciary duty.
Mr. Jacobs also contends that the circumstances surrounding the execution of the irrevocable trust, joint and mutual will, and the transfer documents, including the disproportionate terms and lack of fairness, are sufficient to support a presumption, as a matter of law, of undue influence. We disagree.
The trial court found, and there was sufficient evidence to do so, that both Mr. and Mrs. Jacobs were competent at all material times and that Mr. Jacobs was not under legal duress. When two competent people enter into an agreement, the court will not interfere with their exercise of judgment by not allowing them to be the sole judges of the benefits to be derived from their bargains. Provided there is no incompetency and their bargain does not violate the law, the court will not scrutinize the amount of benefits received by either party. Genunzio v. Genunzio, 598 So.2d 129 (Fla. 2d DCA 1992). The fact that Mr. Jacobs did not receive what he thought he was entitled to, accordingly, does not give him the right to void all of the instruments in question. See Genunzio.
Mr. Jacobs does not appeal the trial court's holding that he was not under legal duress at material times, but does contend that he was subjected to undue influence. We once again disagree.
In order to establish undue influence it is necessary to establish that a party (1) occupied a confidential relationship with the other party, (2) was a substantial beneficiary under the instrument, e.g. a will, and (3) was active in procuring the instrument. See In re Carpenter, 253 So.2d 697 (Fla. 1971); Carter v. Carter, 526 So.2d 141 (Fla. 3d DCA), rev. denied, 536 So.2d 243 (Fla. 1988).
In this case, there is no evidence Mrs. Vaillancourt was active in procuring the instruments or that she even knew they were being prepared until after Mr. and Mrs. Jacobs executed them.
We also agree with the trial court that Robin Vaillancourt's position did not constitute undue influence. Although we do not agree that the fact Mr. Vaillancourt might benefit from the Jacobs' estate plan made him a substantial beneficiary, it is not necessary for us to so hold. We agree that a presumption arises if a substantial beneficiary was active in procuring the execution of the will and occupied a confidential relationship with the decedent. Carter. Mr. Vaillancourt responded to a request for help, performed the duties requested of him, and *672 although his actions, because he is an attorney, established a fiduciary relationship, they did not amount to active procurement. Especially as to the will, once a proponent makes a prima facie showing of the formal execution and attestation thereof, the burden of proof shifts to the contestant and he must establish the facts constituting the grounds upon which the revocation is sought. Smith. The trial court, in the amended final judgment, specifically found that Mr. Jacobs did not establish that Mr. Vaillancourt was active in the procurement of those documents and if there is no active procurement, there is no presumption of undue influence. Harnick v. Harnick, 444 So.2d 87 (Fla. 3d DCA 1984). See also Smith.
We also find that there was no undue influence asserted by Mrs. Jacobs. She wanted her daughter Judy to ultimately inherit all of their estate and persuaded Richard to go along with that plan. A husband and wife naturally have influence on each other, but it cannot be considered undue influence. The law recognizes the special role of husband and wife. The confidential relationship which exists between a husband and wife is not one which may be considered in the law governing will contests. Tarsagian v. Watt, 402 So.2d 471 (Fla. 3d DCA 1981). Since a confidential relationship is one necessary requirement which must be met before a presumption of undue influence arises, the presumption cannot arise in the case of a husband and wife. If the confidential relationship between spouses is not exempted from the presumption of undue influence rule, the presumption would arise in nearly every case in which the spouse is a substantial beneficiary because the requirement of active procurement would almost always be present. Tarsagian.
Mr. Jacobs accordingly did not establish a right to relief in this case. We agree with our sister court who said in effect in Carter that it is quite natural, and certainly not intrusive, for members of a family, including a son-in-law to discuss with his mother-in-law any changes she might desire in her will. If members of a family cannot discuss these matters without it being considered improper active procurement, we have finally demolished the family ties of love and natural affection.
Since we find no merit in any of the appellant's contentions concerning the award of attorney's fees and costs, we affirm these consolidated appeals in all respects.
Affirmed.
CAMPBELL, A.C.J., and BLUE, J., concur.