CLARK, J.
Appellant Glenna Kester, personal representative of the estate of Barbara Kes-ter, appeals the trial court’s revised order, entered May 31, 2012, finding that she exercised undue influence over the testa *1198 tor, breached her fiduciary duties to the estate, and took possession of three financial assets after her mother’s death as a constructive trustee rather than as a beneficiary. The order is reversed because the evidence was insufficient to support a finding of undue influence and there was no showing that Appellant breached her fiduciary duties.
Barbara Jane Kester died testate on January 21, 2011. In addition to her will, executed in 2004, Mrs. Kester had executed two codicils to her will, each in December, 2010. The codicils specifically named her children: Glenna Kester (Glenna), Pamela Rocco (Pamela), Cynthia Collins (Cynthia), Monte Kester (Monte), and David Kester (David) as beneficiaries of the estate and designated Glenna and David as personal representatives.[1] Mrs. Kester had given Glenna her durable power of attorney several years previously, but there was competent substantial evidence that Mrs. Kester retained her mental faculties and ability to understand and manage her own finances until the time of her death.
Shortly after Mrs. Kester’s death, Glenna took possession of two financial accounts (the “Farmer & Merchants CD” and the “First Florida Credit Union account”) as either a Payable on Death beneficiary or a joint account holder with right of survivorship. Glenna also took possession of a third account (the “AIG annuity”), on which her mother had listed Glenna, Monte and David as beneficiaries. For this annuity, Glenna testified that she had distributed her brothers’ one-third shares to them and kept her share. Monte and David did not deny receiving this distribution from Glenna in their testimony at the hearing. Because of the beneficiary designations on these three assets, Glenna did not list them as estate assets in the probate action and Pamela and Cynthia, the other two daughters of Mrs. Kester, did not receive any distributions from these assets.
Mrs. Kester’s will and codicils were admitted to probate and the validity of these legally executed documents was never challenged. However, Pamela and Cynthia challenged the inventory of estate assets Glenna filed with the court in the probate proceedings. They petitioned the court to compel Glenna to return the value of the three financial accounts at issue to the estate for distribution. The petitioners argued that because Mrs. Kester’s will clearly stated that her estate would be equally distributed among the five heirs, the resulting uneven division whereby they received far less from their mother’s estate than Glenna and their brothers proved that Glenna had exercised undue influence upon Mrs. Kester regarding the financial accounts. Pamela and Cynthia further charged that Glenna thwarted their mother’s wishes and misappropriated these assets for her own benefit, in breach of her fiduciary duty to the estate and beneficiaries.
After hearing the petition to compel production of the assets, the trial court agreed with Pamela and Cynthia and found that Glenna’s authority to take possession of the accounts from the financial institutions was procured by undue influence over her mother “especially during the time between Mr. Kester’s death in May 2010 and Mrs. Kester’s own death in January 2011.” The court further found that because of her undue influence over Mrs. Kester’s designations on these accounts, Glenna was deemed to have taken possession of the accounts “as a constructive trustee.” *1199 Finally, because Glenna had not followed the notes she and her mother made about Mrs. Kester’s property, the court found that Glenna had breached her fiduciary duty, created by both her durable power of attorney and appointment as personal representative, to carry out her mother’s wishes. The court ordered Glenna (but not her brothers) to return the proceeds from the accounts at issue to the estate and pay damages to Pamela and Cynthia from Glenna’s share of the estate for the litigation and other expenses incurred in correcting Glenna’s wrongdoing in connection with the probate of the estate. In addition to requiring Glenna to provide additional accounting and inventory statements, the trial court revoked the letters of administration appointing Glenna and David the personal representatives and substituted Pamela as the interim personal representative.
The key evidence relied upon by the petitioners, and the trial court, to support the finding of Glenna’s undue influence and breach of fiduciary duty to carry out Mrs. Kester’s intended distribution of her assets is an unsigned, undated spreadsheet purportedly prepared for Mrs. Kester by Glenna in December of 2010. There was testimony that the spreadsheet was the result of discussions between Glenna and Mrs. Kester in December, 2010, concerning Mrs. Kester’s plans for her property. Although both codicils to Mrs. Kester’s will were executed in December of 2010, the spreadsheet is not referenced in the codicils. The spreadsheet listed Mrs. Kes-ter’s property, including the accounts at issue, estimated values, notes about potential distributions of each item and actions to be taken to effectuate this plan (the to-do list). The evidence indicated that in January 2011, Mrs. Kester changed the beneficiaries on the AIG Annuity to remove Pamela and Cynthia, leaving only Glenna, David and Monte, consistent with the first item on the to-do list. However, none of the other items on the list were accomplished before Mrs. Kester passed away. In addition to this document, the petitioners presented the consistent testimony of all the heirs, including Glenna, that they were aware of Mrs. Kester’s intent to distribute her assets equally among her five heirs. Other witnesses described Mrs. Kester’s intelligence, mental acuity and her longstanding active participation in her own financial planning, such as investing in CD’s and shopping for favorable interest rates during the months prior to her death.
Undue influence must amount to “over persuasion, duress, force, coercion, or artful or fraudulent contrivances to such an extent that there is a destruction of free agency and willpower of the testator.” Raimi v. Furlong, 702 So.2d 1273, 1287 (Fla. 3d DCA 1997); see also Peacock v. Du Bois, 90 Fla. 162, 105 So. 321, 322 (1925) (undue influence present where person “is not left to act intelligently, understandingly, and voluntarily” and the influence operates “to dethrone the free agency of the person ... rendering his act the product of the will of another instead of his own”). Undue influence is presumed when (i) a person with a confidential relationship with the testator, (ii) was active in procuring or securing the preparation or execution of the devise and (iii) is a substantial beneficiary thereof. See Estate of Brock, 692 So.2d 907, 911 (Fla. 1st DCA 1996). The active procurement element may be determined based on the following factors: presence of the beneficiary at the execution or the occasions where the testator expressed desire to devise, recommendation of an attorney, the beneficiary’s knowledge of the contents prior to its execution, giving instructions to the drafting attorney, securing witnesses and safekeeping of documents after execution. Raimi *1200 v. Furlong, 702 So.2d at 1287; see also Hade v. Estate of Helling, 811 So.2d 822, 826 (Fla. 5th DCA 2002) (adding (inequality of mental capacity and strength between testator and beneficiary as factor). If sufficient facts are shown to raise the presumption, it may be rebutted by evidence to the contrary. In re Carpenter’s Estate, 253 So.2d 697 (Fla.1971).
The evidence that Glenna had a close relationship with her mother was insufficient to infer any undue influence. The testimony established that the other heirs also had close relationships with Mrs. Kester and assisted her with various tasks and transportation whenever needed. Evidence merely that a parent and an adult child had a close relationship and that the younger person often assisted the parent with tasks is not enough to show undue influence. Estate of Brock, 692 So.2d at 911. Where communications and assistance are consistent with a “dutiful” adult child towards an aging parent, there is no presumption of undue influence. Carter v. Carter, 526 So.2d 141, 142-43 (Fla. 3d DCA 1988). Ultimately, “[i]f an adult child ... cannot talk to his parent ... then we have finally demolished the family ties of love and natural affection.” Id.
Likewise, the evidence of Glenna’s active procurement of Mrs. Kester’s designations of ownership and beneficiaries on the accounts was insufficient to establish the second indicator of undue influence. The testimony was unrefuted that Glenna was not present on any occasion when Mrs. Kester created or changed the financial account ownership or beneficiary list. There was no evidence that Glenna gave her mother instructions regarding any account changes, that Glenna alerted any bank employees prior to her mother’s transactions, or otherwise actively participated in the account designations. In fact, the dates Mrs. Kester named Glenna as a joint account holder or POD beneficiary are not clear from the record and the signature cards and POD designation(s) are not in the record. Mrs. Kester’s statement to a bank employee to the effect that Glenna would “take care of everything” did not establish any conditions on Mrs. Kester’s designations or show that Mrs. Kester did not intend her actions on the accounts as written.
To the extent the trial court relied on the to-do list as evidence of Glenna’s active procurement of Mrs. Kester’s changes to the financial accounts at issue, the unsigned, undated, unwitnessed document is not referenced in the valid codicils apparently prepared around the same time and is simply insufficient to overcome the bank documents providing Glenna’s authority to take possession of the assets after Mrs. Kester’s death. The to-do list notes are legally insufficient to constitute a separate writing identifying devises of tangible property or an agreement to make a devise. See §§ 732.515 & 732.701, Fla. Stat. It is not even clear that the undated notes were prepared prior to Mrs. Kester’s naming Glenna as the POD owner or survivorship owner of the Farmer & Merchants CD and the First Florida Credit Union account.
As for Mrs. Kester’s relative mental capacity and strength, the bank officer who assisted Mrs. Kester in July of 2010 testified that Mrs. Kester had always been knowledgeable about her investments and acted without confusion or anxiety when she substituted Glenna for the late Mr. Kester on one of the accounts. Monte, who accompanied Mrs. Kester to the bank in January of 2011 to change her AIG Annuity to remove Pamela and Cynthia, testified that Mrs. Kester was fully aware of her actions, had always been financially savvy, and was not pressured or compelled in any way on that occasion, even though *1201 her death was imminent. No witness expressed an opinion that Mrs. Kester had lost her free agency or willpower regarding her property even during the month prior to her death.
The evidence also showed that Mrs. Kester distributed some of her assets prior to her death, to siblings other than Glenna. Mrs. Kester assisted Monte financially after he lost his job and assisted Cynthia with finances after Cynthia had a stroke, helped Cynthia finance a vehicle and provided housing for Cynthia. While there was plentiful evidence that Mrs. Kester wished to treat her heirs equally and divide her assets evenly, there no evidence that she meant that each heir would receive equal cash distributions or that all of her property would pass via probate proceedings and none by right of survivorship or to named beneficiaries.
Because there was insufficient evidence of undue influence by Glenna over Mrs. Kester’s designations of her financial accounts, the trial court’s finding that Glenna took the assets as a constructive trustee is also erroneous. A constructive trust is an extraordinary remedy, arising in equity to prevent unjust enrichment resulting from fraud, undue influence, or breaches of fiduciary duty. See, e.g., Joseph v. Chanin, 940 So.2d 483, 487 (Fla. 4th DCA 2006). Here, it is unclear how Glenna breached any duty by taking possession of the accounts in accordance with the bank documents Mrs. Kester executed and, in the case of the AIG annuity, distributing Monte and David their one-third shares.
We will not overturn a trial court’s findings in a probate matter where competent substantial evidence supports its findings, unless the court misapprehends the evidence as a whole or misconceives the legal effect of the evidence. See In re Barker’s Estate, 52 So.2d 785, 785 (Fla.1951); Gair v. Lockhart, 45 So.2d 193, 194 (Fla.1950); Hendershaw v. Estate of Hendershaw, 763 So.2d 482, 483 (Fla. 4th DCA 2000). Because Pamela and Cynthia failed to meet their evidentiary burden to prove the demanding standard for undue influence and to show any breach of Glenna’s fiduciary duties, the trial court’s ruling must be reversed. In addition, the trial court’s award of fees and litigation costs must also be reversed. See § 733.609(1), (2), Fla. Stat.
Accordingly, we REVERSE the trial court’s revised order and REMAND for further proceedings.
LEWIS and RAY, JJ., concur.

. For ease of identification and reference, because of the duplicity of some of the surnames, we refer to the litigants by their first names.