KELSEY, J.
•Appellant challenges the trial court’s order requiring Appellant, as personal representative of the estate of Aiko Okamua Lampp, to return to the estate funds disbursed from Mrs. Lampp’s credit union accounts. The trial court invalidated the payable-on-death (POD) designation pursuant to which the funds were disbursed to Appellant and her son, daughter, and former daughter-in-law, on grounds that Appellant had procured the POD designation through undue influence.’ Appellant argues that a POD designation cannot, as a matter of law, be invalidated for undue influence, and that the trial court also erred by requiring Appellant to return the funds to the estate instead of entering a money judgment against Appellant in the amount of the disbursed funds. We reject these arguments as well as Appellant’s other arguments, and affirm.

Procurement of the POD Designation.

Mrs. Lampp and her late husband executed a family trust and pour-over wills in 2009, several months before he died. The trust document provided that, if Mr. Lampp died first, then upon Mrs. Lampp’s death the entire estate would go to Appel-lee, Hodges Boulevard Presbyterian Church. When.she died, Mrs. Lampp had $333,497.56 in Navy Federal Credit Union accounts that she had jointly owned with her husband before he died. Two disinterested witnesses testified that it was always Mrs. Lampp’s intention to leave the entire estate to. the church. No document existed purporting to take these accounts out of the estate left to the church — until a few days before Mrs. Lampp died.
The trial court found that Appellant had a fiduciary or confidential relationship with Mrs. Lampp, as her “neighbor, friend, paid caregiver, attorney in fact and health care surrogate.” Appellant had hired her former daughter-in-law to help care for Mrs. Lampp. In' contrast to the disinterested witnesses who testified that the entire estate was intended to go to the church, Appellant and her’ former daughter-in-law testified, that Mrs. Lampp told them she did not want the church to have the money from the credit union accounts. They testified that Mrs. Lampp never expressed this contrary intention in the presence of other people. They said that Mrs. Lampp. asked Appellant to get a POD form from the credit union’ and fill it out to give Appellant 75% of the credit union accounts, 10% each to Appellant’s son and daughter, and the remaining 5% to Appellant’s former daughter-in-law. Appellant obtained the PÓD form and completed it in this manner, with the beneficiary information appearing only on the first page of the form. Appellant’ obtained Mrs. Lampp’s signature on the second page. The trial court found that,Mrs. Lampp did not lack mental capacity at the- time she signed the POD form. Appellant procured the POD designation, however, while Mrs. Lampp was. suffering from her final illness, the *1076 symptoms of which were worsening; and only days before her death at age 87.
Appellant’s former daughter-in-law took the POD form back to the credit union the next day, which was the day Mrs. Lampp was hospitalized because of her final illness. After Mrs. Lampp died, and about a week after Appellant was appointed personal representative of the estate, the credit union disbursed the credit union account funds pursuant to the POD designation.
The church filed an Objection to Inventory and petition to remove Appellant as personal representative, arguing that Appellant had wrongfully failed to include the credit union, accounts in the inventory. The trial court “evaluated the credibility of the testimony of [Appellant and her former daughter-in-law] on these points and [] found it unconvincing.” The court found that Appellant used her confidential relationship with Mrs. Lampp and actively procured the gift at issue. As a result of its findings, the court invalidated the POD designation and removed Appellant as personal representative.

Invalidating A POD For Undue Influence.

Contrary to Appellant’s arguments, Florida law allows a POD designation to be invalidated for undue influence. Florida has a legitimate public policy interest in preventing abuse of fiduciary or confidential relationships, and has codified this interest and protected it through case law. See, e.g., § 733.107, Fla. Stat. (2013) (implementing “public policy against abuse of fiduciary or confidential relationships”); In re Estate of Carpenter, 253 So.2d 697, 701 (Fla.1971) (“[I]f a substantial beneficiary under a will occupies a confidential relationship with the testator and is active in procuring the contested will, the presumption of undue influence arises.”).
A POD designation or Totten trust,[1] like a transfer-on-death (TOD) provision, is a “will substitute” that does not transfer ownership of funds until the death of the account holder. E.g., Blechman v. Estate of Blechman, 160 So.3d 152, 157 (Fla. 4th DCA 2015) (recognizing the existence of these and other will substitutes). These are generally considered inter vivos transfers, although they also have attributes of testamentary transfers because they have no effect until the death of the owner. Under Florida law, they are subject to challenge on grounds such as undue influence, fraud, duress, and overreaching. See, e.g., Cripe v. Atl. First Nat’l Bank of Daytona Beach, 422 So.2d 820, 823 (Fla.1982) (finding a joint account invalid as the result of undue influence); Estate of Kester v. Rocco, 117 So.3d 1196, 1200 (Fla. 1st DCA 2013) (applying undue influence analysis to ownership of POD accounts, among others); Laushway v. Onofrio, 670 So.2d 1135, 1136 (Fla. 5th DCA 1996) (holding probate court had authority to invalidate inter vivos gifts procured by undue influence); Fogel v. Swann, 523 So.2d 1227, 1229 (Fla. 3d DCA 1988) (holding that Carpenter applies to inter vivos transfers); Majorana v. Constantine, 318 So.2d 185, 186 (Fla. 2d DCA 1975) (applying will contest principles to inter vivos gifts); Pate v. Mellen, 275 So.2d 562, 565 (Fla. 1st DCA 1973) (On Petition for Rehearing) (holding that Carpenter applied to dispute about *1077 validity of decedent’s signatures on inter vivos gifts).
Pursuant to these authorities and the guiding principles they apply, we affirm the trial court’s conclusion that a POD designation can be challenged on grounds of undue influence. On these facts, we agree with the trial court’s conclusion that Appellant failed to prove that the POD designation was not obtained by undue influence; and that even if the burden of proof had remained with the church, the church had met its burden of proving undue influence that invalidated the POD designation.
Appellant misplaces reliance on our decision in Brown v. Brown, 149 So.3d 108 (Fla. 1st DCA 2014). The issue in Brown was whether the decedent’s intent in establishing joint accounts was consistent with property distribution provisions in her will. We held that the magistrate incorrectly applied section 655.79 of the Florida Statutes, as it relates to ownership of funds after death of any joint account owner, to POD designations. Brown did not involve, and does not preclude, an undue influence challenge to a POD designation.
Likewise, Appellant misplaces reliance on the absence of express undue influence provisions in Florida’s banking law on POD designations. The banking statute, section 655.82 of the Florida Statutes, defines a POD designation; and further provides that, “On the death of the sole party or the last survivor of two or more parties, sums on deposit belong to the surviving beneficiary or beneficiaries.” § 655.82(3)(b), Fla. Stat. (2013). Appellant argues that a POD designation cannot be invalidated for undue influence because this statute does not contain the same undue influence provision that the Florida Probate Code contains. The fact that the banking regulatory statute does not expressly address grounds for invalidating a POD designation is not controlling. Seymour v. Seymour, 85 So.2d 726, 727 (Fla.1956) (holding that banking laws, designed primarily to regulate banks, “are not necessarily conclusive of the ownership of deposited money”). We reject Appellant’s argument because a POD account, although not in the strictest sense a testamentary device and not subject to the formalities required of wills, functions as a will substitute and partakes of many of the same equitable considerations that apply to testamentary transfers. Florida law and policy against abuse of fiduciary relationships apply to contracts, inter vivos transfers, and testamentary transfers, and are properly applied to determine whether a POD designation has been obtained through undue influence. We affirm the trial court’s conclusions that, on the evidence presented, Appellant obtained this POD designation through undue influence, and the gift is void.

Ordering Appellant to Return Funds to the Estate.

We also reject Appellant’s argument that the trial court had no authority to order Appellant to return the credit union funds to the estate. The record reflects that Appellant has failed to comply with the order to return the amount of money improperly disbursed from the credit union accounts, and the trial court has found her in contempt of court and imposed monetary consequences. In effect, of course, the order requires the repayment of the specified amount of money, distinguishing it from an order to return non-fungible tangible property to the estate.[2] An order to return funds to the *1078 estate is very clearly proper. § 733.812, Fla. Stat. (2014) (requiring anyone who improperly receives assets or funds to return them, together with income and gain from the date received); see also McCormick v. Cox, 118 So.3d 980, 982 (Fla. 3d DCA 2013) (affirming executable final judgment requiring trustee to disgorge fees improperly received); Brigham v. Brigham, 11 So.3d 374, 381 (Fla. 3d DCA 2009) (holding trial court should have entered order requiring trustee to return misappropriated funds to the trust).’ ■
Appellant nevertheless claims that such an order is improper because it has the potential to subject Appellant to incarceration for contempt of court, which Appellant argues would be unconstitutional. Instead, Appellant argues, the sole available remedy was a money .judgment in the amount of the misappropriated funds. We conclude that, although ■ the trial court could have exercised discretion to enter a money judgment or provide other remedies, the trial court properly entered an order requiring Appellant to return to the estate the amount of money improperly disbursed from the credit union accounts. Hall v. Tungett, 980 So.2d 1289, 1292 (Fla. 2d DCA 2008) (upholding order compelling recipient of assets or funds from an estate to return them, citing section 733.812, Florida Statutes); Brake v. Murphy, 687 So.2d 842, 842-43 (Fla. 3d DCA 1996) (affirming order granting personal representative’s action to set aside fraudulent conveyances undertaken to avoid execution on amounts owed to estate).
Failure to comply with a court order can justify a finding of civil contempt. See generally Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985) (describing and distinguishing between civil and criminal contempt). The contempt process also makes available to the trial court the imposition of interest on the amounts unpaid, as well as fines, costs, and attorney’s fees as sanctions for noncompliance. The trial court here has not, however, ordered that Appellant be incarcerated. The law of civil contempt protects Appellant from being indefinitely incarcerated without an evidence-based finding that she has the present ability to pay the purge amount (i.e., return the credit union funds to the estate). Id. at 1278. The law of indirect criminal contempt, in contrast, allows incarceration of a party who has intentionally divested herself of the ability to pay, after compliance with due process requirements and the Rules of Criminal Procedure. Elliott v. Bradshaw, 59 So.3d 1182, 1186 (Fla. 4th DCA 2011) (setting forth circumstances under which indirect criminal contempt may be imposed for intentional divestment of assets or property). In its present posture, the record does not reflect that .the trial court has ordered incarceration under any theory. Any argument about the propriety of incarceration is therefore premature.
Accordingly, we AFFIRM.
WOLF and THOMAS, JJ., concur.

. Totten trusts are named after the’ case holding them valid. In re Totten, 179 N.Y. 112, 71 N.E. 748 (1904); see also Seymour v. Seymour, 85 So.2d 726, 727 (Fla.1956) (adopting “without hesitation” the common law doctrine of Totten trust). Totten trusts involve a financial account designated as being held by the owner, who -retains all control over the account while living, as trustee for another, who receives ownership of the account upon the owner’s death. They are now subsumed within § 655.82 of the Florida Statutes.

. See Arduin v. McGeorge, 595 So.2d 203, 204 (Fla. 4th DCA 1992) (“Money is fungible. Where money is the asset upon which it is proposed that a constructive trust be im *1078 posed, it is necessary that a specific amount be identified and located, either by tracing it to a specific and existing account, or where the funds have been converted into another type of asset such as by the purchase of some item of property, by tracing and identifying the transaction in which the conversion occurred and thus tracing the money into the item of property.”).