GOODSPEED v. MacNAUGHTON, GREENAWALT & CO.

1. SALES—BANK STOCK—REPRESENTATIONS—WARRANTY.

Representation made in good faith to prospective buyer of bank stock that by placing it in the name of an uncollectible person the buyer would not be subject to an assessment in case of insolvency of bank *held,* not a warranty for breach of which an action would lie.

2. SAME—REPRESENTATION OF LAW.

Representation of seller of bank stock that buyer would be free from any chance of being subjected to an assessment thereupon, because stock would be registered on bank's books in the name of an uncollectible person, being a representation of law and not a representation of fact or warranty, may not be made the basis of recovery in buyer's action against seller after satisfaction of receiver's assessment.

3. ACTION—PLEADING.

A party cannot, by merely calling a representation a warranty, create a cause of action where, under the facts, none exists.

4. PRINCIPAL AND AGENT—AUTHORITY OF CORPORATION'S AGENT—BURDEN OF PROOF.

The burden of proving that defendant corporation's agent had authority to make representation upon which alleged cause of action is based is on plaintiff.

5. APPEAL AND ERROR—AUTHORITY OF CORPORATION'S AGENT.

Question of want of authority of defendant corporation's agent not being briefed, decision is not rested thereupon.

6. CONTRACTS—ACCEPTANCE OF OFFER.

Where seller of bank stock agreed to try to resell a certain number of the shares at best price obtainable above a named price per share no mutually binding obligation arose where seller's offer was never accepted by buyer either in writing or by delivery of any stock for resale.

* Continued from Vol. 287.

Appeal from Kent; Brown (William B.), J. Submitted January 4, 1939. (Docket No. 35, Calendar No. 40,333.) Decided March 9, 1939.

Assumpsit by Theron H. Goodspeed against Mac-Naughton, Greenawalt & Company, a corporation, for alleged breach of contract. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Norris, McPherson, Harrington & Waer*, for plaintiff.

*Smith, Strawhecker & Wetmore*, for defendant.

NORTH, J. This is a suit at law in which plaintiff seeks to recover for loss and damage sustained by him incident to the purchase of bank stock, such purchase having been made by plaintiff through a Mr. H. S. Greenawalt, vice-president and acting agent of defendant corporation. The case was tried before a jury, and upon defendant's motion at the conclusion of plaintiff's proofs, verdict was directed in favor of defendant. Plaintiff has appealed.

There is no material conflict between the testimony given in his own behalf by plaintiff and that of Mr. Greenawalt who was called by plaintiff for cross-examination under the statute.* The circumstances out of which the litigation arises appear from the following resume of Greenawalt's testimony in appellant's brief:

"Mr. Greenawalt, being called by plaintiff for cross-examination, testified that he told Mr. Goodspeed that he had 1,462 (1,400) shares of American Home Securities Bank stock for sale at $1.50 per share; that as of the last statement of December 31,

---

* 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).—REPORTER.

1931, the stock had a book value of over $15 per share; that the bank had on hand and due from reserve over a million dollars and it had no bills payable; that he was a director of the bank and had full confidence that the bank was solvent; that he had confidence in the management of the bank; that in his estimation the stock was cheap and undoubtedly would make the purchaser a profit; that, 'Mr. Goodspeed said he would be very glad to buy the stock providing—no, not providing—that he would be very glad to buy the stock but he was fearful of an assessment;' that he, Greenawalt, suggested that Mr. Goodspeed put the stock in the name of his own nominee who would be uncollectible; that Mr. Goodspeed said he did not know of any nominee of that kind; that he (Greenawalt) said he had an employee who was uncollectible and he (Greenawalt) would ask that employee whether he cared whether it was put in his name and if not we would put it in the name of Raymond W. Brinn whom we knew to be uncollectible; that in reply to that suggestion Mr. Goodspeed said, 'if that is the way you can handle it and you are reasonably assured that there will be no assessment to me, I will buy it.' And he (Greenawalt) told Mr. Goodspeed that this was a customary procedure in the city of Grand Rapids with business men with whom he had dealt in the purchase and sale of bank stock; that he (Greenawalt) told Mr. Goodspeed that he had other sales to three different people for 240 shares which would show him a profit immediately and he (Greenawalt) would buy back the 240 shares at $2 a share thus leaving Goodspeed only 1,160 shares which he would be getting at less than $1.50 per share; and that 'I further made an agreement with Mr. Goodspeed whereas he would allow me to sell for him 460 additional shares at $2 a share or better, on which stock we were to get half of the profit for our selling (shares)' and 'he did not care to give me that option on the whole 1,160 shares.' "

So far as their conversation related to a possible statutory assessment on the bank stock, the substance of plaintiff's testimony is that Greenawalt said:

" 'I can take care of that part of it. There won't be any assessment on the stock to you.' And he could fix that in some kind of a manner so that I would be free from any chance of an assessment. That was very much the conversation."

The above-outlined conversation between these parties was over the telephone and immediately thereafter defendant wrote plaintiff a letter confirming the sale of 1,400 shares and resale of 240 and the agreement to "try to resell 460 of the remainder of this stock for you at the best price we can in the market above 2 and split with you on everything we get on the stock above the basic price of 2 net."

Defendant caused the stock which was sold to plaintiff to be issued in the name of Raymond W. Brinn, and the certificates, indorsed in blank by Brinn, were delivered to and retained by plaintiff. The sale of this stock occurred in April, 1932. In the following year the bank went into the hands of a receiver. In 1938 the receiver demanded that plaintiff pay a 100 per cent. assessment on the 1,160 shares of stock which stood in the name of Brinn. Suit was brought on this demand, judgment taken against plaintiff herein, which he ultimately satisfied by paying the receiver $14,333.92. Aside from the 240 shares sold at the time plaintiff purchased, defendant did not sell any of plaintiff's stock.

In the instant suit, as stated in plaintiff's brief, he bases his right to recover upon (1) defendant's express warranty that plaintiff "would not become liable to assessment as the owner of the stock;" and (2) an agreement by defendant "to try to resell 460

shares at the best price obtainable above $2 per share.''

We are first concerned with whether under this record plaintiff can recover on what he asserts is ''an express warranty'' that he would not be subjected to a statutory assessment on this stock. Clearly, under this record, the statement made by defendant's agent that in the event the transaction was consummated in the manner proposed, plaintiff would not be subjected to a statutory assessment on this stock, was a statement of law, not one of fact. *Rogan* v. *Illinois Trust & Savings Bank,* 93 Ill. App. 39. There is no claim that the statement by defendant's agent was made in bad faith. He was simply mistaken as to the law, of which it is not to be presumed he had any greater knowledge than plaintiff, who testified he had ''been engaged in the banking business about 12 years.'' The statement of defendant's agent to plaintiff that under the proposed plan he ''would be free from any chance of an assessment'' cannot be distorted into a representation of a *fact* or of a warranty any more than could a statement that under like circumstances plaintiff's creditors could not reach his stock by court process. It is hardly necessary to cite authorities to the effect that the representation being one of law and not of fact, plaintiff is not entitled to recover, *Krushew* v. *Meitz,* 276 Mich. 553.

We are mindful of plaintiff's position stated in his reply brief as follows:

''Nowhere in the declaration is there any allegation that the defendant, knowingly or otherwise, made any misrepresentation of law or fact to plaintiff. There is alleged in the declaration only the making of a contract between plaintiff and defendant, a breach thereof, and the consequent damages which plaintiff seeks to recover.''

On this phase of the case plaintiff's declaration recites:

"And said defendant corporation, to induce plaintiff to buy said shares of stock, represented to plaintiff that he would not, by entering into said contract, assume liability to assessment as a stockholder of said bank and said defendant corporation agreed to have the certificates representing said shares of stock issued and carried in the name of one of the employees of said defendant corporation to be selected by said corporation, so that plaintiff would not become liable to assessment as the owner of said stock in case said bank should become insolvent."

Nowhere in plaintiff's declaration does he allege a right to recover for breach of a *warranty*. But regardless of plaintiff's allegations in his declaration, he testified:

"*Q.* And, as I understand your claim, it is that it was represented to you that by doing so you would not be liable yourself upon the assessment?

"*A.* Yes, sir.

"*Q.* And that is the extent, practically, and substance of your conversation with Mr. Greenawalt?

"*A.* Well, Mr. Greenawalt told me there was no chance for any assessment on the stock at all the way he would manipulate the deal."

Appellant's counsel seem to concede if Greenawalt's statement that there would be no assessment on the stock to Mr. Goodspeed is only a representation, not a warranty, there can be no recovery in consequence thereof. We think the law is fairly settled that a statement of this character cannot be made the basis of recovery on the theory that instead of being a mere representation it is a warranty:

"Again, there are some matters which, even though asserted positively, are in their nature so dependent on individual opinion that, no matter how positive the seller's assertion, it is not held to create a warranty. * * * While it cannot be asserted that any statement which is too largely mere matter of opinion to amount to a warranty may not, at least if fraudulently made, be ground for an action for deceit or proceedings for rescission of a bargain, the converse statement may be made, that is, if a statement falsely and fraudulently made will not sustain an action of deceit or afford ground for rescinding a contract, it is still more clear that it cannot amount to a warranty." 4 Williston on Contracts (Rev. Ed.), p. 2691, § 971 A.

The only fair conclusion deducible from this record is that each of the parties mistakenly thought they had agreed upon a plan whereby plaintiff would be safe from the possibility of a stock assessment. A finding to the contrary by a trial court or a jury would be vacated as not being sustained by this record. Plaintiff cannot by adopting his chosen terminology, *i. e.,* calling the representation a warranty, create a cause of action where, under the facts, none exists.

While it is not discussed in the briefs, obviously the theory on which plaintiff now seeks to recover reimbursement for paid assessments involves the authority of defendant's agent, Greenawalt, to make a contract of this character. This phase of the alleged transaction is not mentioned in defendant's written confirmation. Such authority is neither pleaded nor proven. It cannot be implied from any facts or circumstances disclosed by this record. The burden of proving the authority of the agent was on plaintiff, *Miskiewicz* v. *Smolenski,* 249 Mich. 63, 72. Because it is not briefed, we do not plant deci-

sion on failure of proof of the agent's authority in the respect noted. (See 3 Comp. Laws 1929, § 13537 [Stat. Ann. § 27.31].) However, this phase of the record seems also to sustain the conclusion that instead of being a warranty, the statement of defendant's agent that plaintiff would not be liable for a statutory stock assessment was, as alleged in substance in plaintiff's declaration, a mere *representation* to induce plaintiff to purchase.

The remaining consideration is whether, as stated in appellant's brief, he is entitled to recover on ''an agreement by defendant to try to resell 460 shares at the best price obtainable above $2 per share.'' We have already noted the testimony having a material bearing on this phase of the case, particularly the written confirmation of the telephone communication. In this writing the pertinent portion reads as follows:

''We will be very glad to try to resell 460 of the remainder of this stock for you at the best price we can in the market above 2 and split with you on everything we get on the stock above the basic price of 2 net.''

It is worthy of note that defendant's undertaking at most was only ''to try to resell.'' It might well be held that defendant's expression of being glad ''to try to resell'' is not a *contract* to resell. But it is equally important and decisive to note that the only written memorandum passing between these parties was simply a confirmation of defendant's oral proposition. The writing so states. Plaintiff made no reply. Nowhere in this record is there any testimony tending to show that the alleged agreement was made mutually binding by plaintiff's acceptance of defendant's offer. Plaintiff did not authorize or agree to the resale of his stock at any

price or accept defendant's proposition so as to make it a mutually binding obligation. He did not deliver any of his stock to defendant for resale. The alleged contract upon which plaintiff seeks to recover damages because of defendant's failure to resell is wholly lacking in mutuality and cannot be a basis of recovery. *Michigan College of Medicine* v. *Charlesworth,* 54 Mich. 522; *Wilkinson* v. *Heavenrich,* 58 Mich. 574 (55 Am. Rep. 708); *Willebrandt* v. *Sisters of Mercy,* 185 Mich. 366.

For the reasons hereinbefore noted, the judgment entered in the circuit court is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred. MCALLISTER, J., did not sit.