480 So.2d 1328 (1985)
ATLANTIC NATIONAL BANK OF FLORIDA, Appellant,
v.
James C. VEST, Appellee.
No. 84-1468.
District Court of Appeal of Florida, Second District.
October 25, 1985.
Rehearing Denied January 9, 1986.
*1329 William A. Seacrest of Haas, Boehm, Brown, Rigdon, Seacrest and Fischer, P.A., Lakeland, for appellant.
Robin Gibson of Gibson, Connor & Lilly, Lake Wales and John W. Frost, II of Frost & Purcell, P.A., Bartow, for appellee.
*1330 SCHOONOVER, Judge.
The Atlantic National Bank of Florida appeals from a final judgment entered in favor of appellee, James C. Vest. The judgment was entered pursuant to a jury verdict in connection with Vest's third party complaint. We reverse.
The initial complaint filed in the trial court sought damages as a result of an accident involving an automobile driven by Daniel Lee, the appellee's stepson, but the events leading up to the appeal occurred prior to the accident. Vest, in order to help his stepson finance an automobile, agreed to co-sign a promissory note. The bank was not willing to give a loan to the stepson, but would approve the loan if Vest, a long-time customer of the bank, was willing to co-sign.
Vest made final arrangements for the loan through Louise Goolsby, a loan officer with Atlantic National Bank. After the loan officer contacted Vest's insurance agent and confirmed that the car had been insured, Vest informed the loan officer that he wanted to avoid liability in the event his stepson was involved in an accident, but also wanted the power to dispose of the automobile were his stepson to become delinquent in the required loan payments. Vest asked whether he would be liable if the title was placed in the name of "Lee or Vest." The loan officer stated that she did not know. At Vest's request she placed a call to obtain the information. Vest testified he did not know who the loan officer called. The loan officer testified that she called back Vest's insurance agent and that she relayed to Vest the agent's statement that no liability would be incurred if the stepson were twenty-five years or older and the title stated "or." Although the loan officer did not state that she accepted this opinion, Vest testified that he assumed she was satisfied with it and that he therefore was also satisfied. He had the title placed in the name of "Lee or Vest." The answer had no effect on the loan transaction and Vest testified he would have completed the transaction had he received different information. He would not, however, have had his name put on the title. Vest knew the loan officer did not know the answer to his question, and knew that the opinion of nonliability if the title was in the name of "Lee or Vest" was not that of the loan officer.
Shortly after the loan transaction was completed and the title application made, Vest's stepson was involved in an accident with Alan J. Bradley. Mr. and Mrs. Bradley sued Lee, the stepson, as the driver and owner of the automobile and Vest as co-owner. After the accident, Bradley and Vest entered into an agreement which, in effect, provided that if Vest sued the bank, the Bradleys would accept, in satisfaction of their claim against him, whatever he received in the action, less costs and less fifteen per cent toward attorney fees.[1] Vest then filed a third party complaint seeking indemnity against the bank. The complaint set forth two theories: first, the bank was guilty of negligent misrepresentation because the loan officer's statement was made while acting within the scope of her employment; second, the bank had breached its fiduciary duty to Vest.
The bank's motion for a directed verdict, made at the close of Vest's case-in-chief and renewed at the close of all of the evidence, was denied. The jury returned a special verdict form finding that the bank had negligently supplied false information upon which Vest had justifiably relied and that the bank had breached its fiduciary duty to Vest. The jury awarded the Bradleys $1,250,000 in damages and found that the bank was obligated to pay that sum to Vest. The court then ordered the bank to pay the Bradleys' costs and Vest's attorney fees. The bank filed a timely notice of appeal.
In reviewing a ruling denying a defendant's motion for directed verdict, we properly consider all the evidence presented in the trial court. Lake Parker Mall, Inc. v. *1331 Carson, 327 So.2d 121, (Fla. 2d DCA 1976), cert. denied, 344 So.2d 323 (Fla. 1977). Even construing all testimony in a light most favorable to Vest, see Paiken v. Beach Cabs, Inc., 187 So.2d 93 (Fla. 3d DCA), cert. denied, 192 So.2d 496 (Fla. 1966), we find the trial court erred in not directing a verdict for the bank.
Indemnity has been generally defined as a right that inures to a person who has discharged a duty that is owed by him but which, as between himself and another, should have been discharged by the other. Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979); Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977). In Florida, actions for indemnity have been restricted to situations involving either a duty, an express contract, or the existence of active and passive negligence. Stuart. Vest does not contend that his right to indemnity arises out of an express contract; he contends his rights arise out of either active and passive negligence or breach of a duty.
We reject Vest's contention that he has a right to indemnity because of the existence of active and passive negligence.[2] Indemnity between tortfeasors is allowable only where the whole fault is in the one against whom indemnity is sought. Houdaille; Stuart. This distinguishes indemnity from contribution, where a defendant is charged only with a ratable proportion of the negligence. Indemnity shifts the entire loss from one who, without active negligence or fault, has been obligated to pay another because of some vicarious, constructive, derivative, or technical liability.
A judgment cannot properly be awarded against the bank in this case because the whole fault was not in the bank, and the bank cannot be held vicariously or constructively liable for the stepson's acts. Even more important, the Bradleys' injuries did not result from the same actions that allegedly caused the bank to breach its duty to Vest. The bank allegedly breached its duty to Vest by conveying incorrect information concerning the manner in which a car should be titled. The Bradleys were not injured by Vest's receipt of incorrect information; they were injured by the stepson's negligent operation of a motorcycle.
Although Vest, the party seeking indemnity, is without fault in this case, he did not become constructively liable to pay the Bradleys because of the bank's wrongdoing, but because of his stepson's wrongdoing. Vest, therefore, would have the right to be indemnified, not by the bank, but by his stepson.
Apart from failing to establish the requisite relationship in order to prevail in an action for indemnity, Vest failed to present evidence from which the jury could have properly found, in a direct cause of action against the bank, breach of a duty through negligent misrepresentation. In order to be actionable, a suit for negligent misrepresentation must contain the following elements: (1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the the representation without knowledge as to its truth or falsity, or must *1332 make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend that the representation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation. Alexander/Davis Properties, Inc. v. Graham, 397 So.2d 699 (Fla. 4th DCA), pet. for rev. denied, 408 So.2d 1093 (Fla. 1981); Joiner v. McCullers, 158 Fla. 562, 28 So.2d 823 (1947); Kutner v. Kalish, 173 So.2d 763 (Fla. 3d DCA), cert. denied, 183 So.2d 210 (Fla. 1965).
We find two elements missing in Vest's cause of action. First, the misrepresentation was not one of a material fact.[3] A fact is material if, but for the alleged nondisclosure or misrepresentation, the complaining party would not have entered into the transaction. Hauben v. Harmon, 605 F.2d 920 (5th Cir.1979); Morris v. Ingraffia, 154 Fla. 432, 18 So.2d 1 (1944). Although materiality normally is a question of fact, see Hauben; Biscayne Boulevard Properties, Inc. v. Graham, 65 So.2d 858 (Fla. 1953), the facts in this case are undisputed. The transaction between Vest and the bank was one in which Vest was co-signing a promissory note so that his stepson could purchase an automobile. Vest testified he would have completed the transaction with or without the alleged misrepresentation. The fact that he would have titled the automobile differently had nothing to do with the loan itself.
The second element missing is the representor's intention that the misrepresentation induce another to act on it. Although a negligent misrepresentation may, under certain circumstances, constitute an inducement, Thompson v. Wilkins, 143 Ga. App. 739, 240 S.E.2d 183 (1977), the determination of inducement turns on whether a sufficient causal relationship is established between the misstatement and the representee's subsequent act. See Ostreyko v. B.C. Morton Organization, Inc., 310 So.2d 316 (Fla. 1975). As previously discussed, Vest's decision to co-sign the loan was independent of the information he received regarding the manner in which the car should be titled. The trial court, therefore, erred in not directing a verdict for the bank on the theory of negligent misrepresentation.
The remaining theory upon which Vest bases his claim for indemnity is breach of a fiduciary duty. Without holding that breach of a fiduciary duty is a proper theory upon which a cause of action for indemnity may be based, we find that Vest failed to present evidence from which the jury could properly find, in either a direct action or in an action for indemnity, that the bank breached a fiduciary duty owed to Vest.
The term "fiduciary or confidential relation" is a very broad one. It exists, and relief is granted, in all cases in which influence has been acquired and abused, and in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. The rule embraces both technical fiduciary relations and informal relations that exist wherever one man trusts and relies upon another. Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927); Gammage v. Turner, 206 So.2d 252 (Fla. 2d DCA), cert. denied, 212 So.2d 870 (Fla. 1968).
The informal type of fiduciary relationship may exist under a variety of ircumstances, and does exist in cases where there has been a special confidence reposed in one, who in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. Denison State Bank v. Madeira, 230 Kan. 684, 815, 640 P.2d 1235 (1982); Lindholm v. Nelson, 125 Kan. 223, 264 P. 50 (1928). It in fact exists where *1333 confidence is reposed on one side and there is resulting superiority and influence on the other. The relations and duties involved need not be legal, but may be moral, social, domestic, and merely personal. Dale v. Jennings, 90 Fla. 234, 107 So. 175 (1926).
There was sufficient evidence in the case before us for the jury to properly find that a fiduciary relationship arose between Vest and the bank. Although the loan officer did not hold herself out as having any special knowledge, Vest reposed confidence in the bank by asking the loan officer a legal question, thus creating a position of superiority and influence on the part of the bank in providing the information. The bank's fiduciary duty was satisfied, however, when the loan officer stated she did not know the answer to Vest's question. The bank's duty was discharged and the parties at that point acquired equal status. Vest testified, moreover, that he knew the loan officer's statement regarding the title was merely a repetition of information she had received from another source and that it was not the legal opinion of the officer.
Additionally, where the breach of fiduciary duty between a bank and its customer has been found, or where the courts have held that a jury could reasonably so conclude, it is generally possible to identify a benefit flowing to the bank as a result of the breach. Hooper v. Barnett Bank of West Florida, 474 So.2d 1253 (Fla. 1985); Holm v. Sun Bank/Broward, N.A., 423 So.2d 1007 (Fla. 4th DCA 1982); First Federal Savings & Loan Ass'n of Hamilton v. Caudle, 425 So.2d 1050 (Ala. 1983); Stone v. Davis, 66 Ohio St.2d 74, 419 N.E.2d 1094, cert. denied, 454 U.S. 1081, 102 S.Ct. 634, 70 L.Ed.2d 614 (1981). The procurement of a benefit or advantage by reason of the misrepresentation is one of the factors to be considered in determining the existence of a fiduciary relationship implied in law. See Madeira. The record before us, however, does not reflect that the bank took any advantage of Mr. Vest. The bank only relayed information that was acquired at Vest's request. The information, moreover, had no effect on the loan transaction.
We, accordingly, find that the trial court erred in not directing a verdict for the bank. We reverse the judgment and the orders awarding costs and attorney fees, and we remand with instructions that a judgment for the bank be entered.
Reversed and remanded.
SCHEB, A.C.J., and OTT, J., concur.
NOTES
[1] We do not pass upon the validity of this agreement, and, in view of our disposition, it is not necessary for us to consider whether Vest would be precluded from bringing a suit for indemnity because the agreement prevented him from suffering any loss.
[2] We agree with the authors of an article entitled "Indemnity After Houdaille," 34 Miami L.Rev. 727, 748 (1980), that a third party action for implied indemnity must satisfy the following criteria:

(a) the plaintiff's complaint must allege a cause of action against the indemnitee based at least in part on imputed liability; and
(b) the third party complaint must allege:
(1) there existed a special duty running from the indemnitor to the indemnitee,
(2) the indemnitor breached his special duty to the indemnitee,
(3) the plaintiff's injuries resulted from the same actions that breached the indemnitor's duty to the indemnitee; and
(4) the indemnitee can be held liable to the plaintiff for the injuries to the plaintiff resulting from the indemnitor's act.
These elements must not only be alleged, they must be proven. The Bradleys' original complaint did allege a cause of action against Vest based upon imputed liability arising from Vest's status as co-owner of the automobile. In connection with the third party complaint, however, there was no evidence showing that the bank breached a special duty it owed to Vest. The Bradleys' injuries, moreover, did not result from any alleged breach of duty by the bank to Vest; they resulted from the stepson's negligence.
[3] In view of our disposition of the case, it is not necessary for us to decide whether the statement relayed by the loan officer was an opinion or a statement of fact. If the parties were dealing on equal terms, the statement would be regarded as an opinion; if the party making the statement had exclusive or superior knowledge, it would be regarded as a statement of fact. Ramel v. Chasebrook Construction Co., 135 So.2d 876 (Fla. 2d DCA 1962); see also Goodspeed v. MacNaughton, Greenawalt & Co. 288 Mich. 1, 284 N.W. 621 (1939). The jury could have found, upon proper instructions, that the loan officer had superior knowledge and that the information was therefore a statement of fact.