814 So.2d 370 (2002)
Jane DOE, Petitioner,
v.
William Dunbar EVANS, III; Church of the Holy Redeemer, Inc.; the Diocese of Southeast Florida; and Calvin O. Schofield, Jr., Respondents.
No. SC94450.
Supreme Court of Florida.
March 14, 2002.
*371 Edward Campbell of The Roberts Law Firm, P.A.; and Randy D. Ellison, West Palm Beach, FL, for Petitioner.
Thomas E. Ice of Barwick, Dillian, Lambert & Ice, P.A., Miami, FL; and David S. Rutherford and Christopher Renzulli of Renzulli & Rutherford, L.L.P., New York, NY, for Respondents.
James F. Gilbride and Hetal H. Desai of Gilbride, Heller & Brown, P.A., Miami, FL; J. Patrick Fitzgerald, General Counsel for Archdiocese of Miami, Coral Gables, FL; and George Meros of Rumberger, Kirk & Caldwell, Tallahassee, FL, for Archbishop John C. Favalora, as Archbishop of the Archdiocese of Miami and as President of the Florida Catholic Conference and J. Lloyd Knox, Presiding Bishop of the Florida Annual Conference of the United Methodist Church, Amici Curiae.
May L. Cain and William J. Snihur, Jr. of Cain & Snihur, North Miami Beach, FL, for Jane Doe I and Jane Doe II, Amicus Curiae.
Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, FL, for the Academy of Florida Trial Lawyers, Amicus Curiae.
Peter A. Miller of Conroy, Simberg & Ganon, P.A., Coral Gables, Florida, and Robert S. Glazier of the Law Offices of Robert S. Glazier, Miami, FL, for Miami Shores Presbyterian Church, Amicus Curiae.
PARIENTE, J.
We have for review Doe v. Evans, 718 So.2d 286 (Fla. 4th DCA 1998), a decision of the Fourth District Court of Appeal that expressly construes the First Amendment of the United States Constitution. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
The issue presented in this case is whether the First Amendment bars claims for negligent hiring and supervision and breach of fiduciary duty against a religious institution based upon alleged sexual misconduct by one of its clergy with a parishioner in the course of an established marital counseling relationship. For the reasons expressed in Malicki v. Doe, 814 So.2d 347 (Fla. 2002), we hold that the First Amendment does not provide a shield behind which a church may avoid liability for harm caused to a third party arising from the alleged sexual misconduct by one of its clergy members during the course of an established marital counseling relationship. We therefore quash the Fourth District's contrary decision.

BACKGROUND
Jane Doe brought a lawsuit against the Reverend William Dunbar Evans, III *372 ("Evans"), the Church of the Holy Redeemer, Inc. ("Holy Redeemer"), the Diocese of Southeast Florida, Inc. ("the Diocese"), and Calvin O. Schofield, Jr., a bishop of the Diocese. Doe alleged in her second amended complaint that she was a former parishioner at Holy Redeemer, where Evans was employed as the pastor. Doe's complaint asserted that part of Evans' duties as pastor included "providing counseling and spiritual advice to parishioners having marital difficulties." Doe alleged that Evans approached her while she was having marital difficulties and asked if he could assist her in counseling, spawning a counselor-counselee relationship. During the course of this counseling relationship, which lasted several months, Evans instituted a personal relationship and became involved with Doe in a "romantic manner."
Doe alleged that Holy Redeemer, the Diocese, and Schofield ("the Church Defendants") all were aware of prior incidents involving sexual misconduct by Evans during counseling "at another church and also within the Diocese," and also while at Holy Redeemer, all before the counseling relationship between Doe and Evans began. Doe alleged that "[i]n spite of this knowledge, nothing was done by the [Church] Defendants ... to rectify the situation." Doe alleged that the Church Defendants had the right to exercise control over a "sexually exploitive pastoral counselor" and in fact had exercised such control in the past. Further, Doe claimed that none of the defendants' conduct was "motivated by any sincerely held religious belief."
Count I of the second amended complaint set forth a cause of action for breach of fiduciary duty as to all defendants. Doe alleged that Evans and the Church Defendants assumed a fiduciary duty to her by directly soliciting her trust and confidence. Evans then breached that duty by becoming romantically involved with her and by failing to adequately keep Doe's interests paramount, and the Church Defendants allegedly breached their fiduciary duty because they were aware early on in the counseling process that Evans was abusing his position of trust but failed to protect Doe. Count II of the second amended complaint set forth a cause of action against the Church Defendants for negligent hiring and supervision based upon their knowledge of Evans' prior sexual misconduct in similar circumstances. Count III alleged a cause of action against all of the defendants for outrageous conduct.
The Church Defendants moved to dismiss, alleging that Doe's tort claims were barred by the First Amendment and involved practices and procedures beyond the purview of secular courts.[1] As to the third count alleging a cause of action for outrageous conduct, the Church Defendants alternatively claimed that this cause of action was neither recognized by the Florida courts nor, if the allegations were construed as a claim of intentional infliction of emotional distress, did the allegations rise to the level of "outrageousness" required by case law. See Evans, 718 So.2d at 288. The Fourth District affirmed the trial court's dismissal of this count, see id. at 293-94, and Doe did not raise this issue as error in this Court.
Further, the Church Defendants did not seek dismissal of the first two counts on the basis that those counts failed to state a cause of action under Florida law, nor did they request a more definite statement as *373 to any of the allegations in the second amended complaint. The trial court granted the Church Defendants' motion to dismiss on the basis that the First Amendment barred consideration of Doe's claims. Doe appealed the dismissal and the Fourth District affirmed. The Fourth District agreed with the trial court that the First Amendment barred both the breach of fiduciary duty claim and the negligent hiring and supervision claims against the Church Defendants. See id. In holding that the First Amendment barred considerations of the tort claims in this case, it explained that had this case arisen in the context of allegations involving sexual assault on a child, the case would present a more compelling factual scenario. See id. at 290.

DISCUSSION
In Malicki, 814 So.2d 347, we held that the First Amendment does not preclude a secular court from imposing liability against a church for harm caused to an adult and a child parishioner arising from the alleged sexual assault or battery by one of its clergy. Id., op. at 351. In so holding, we disapproved the reasoning of the Fourth District's opinion in this case, which apparently would have allowed a tort claim against a church defendant only if the underlying sexual misconduct involved criminal activity. See id. at 364. As we explained in Malicki, "[w]hether the priest's tortious conduct in this case involved improper sexual relations with an adult parishioner he was counseling or sexual assault and battery of a minor, the necessary inquiry in the claim against the Church Defendants is similarly framed: whether the Church Defendants had reason to know of the tortious conduct and did nothing to prevent reasonably foreseeable harm from being inflicted upon the plaintiffs." Id. at 364.
In this case, Doe raises claims for negligent hiring and supervision and breach of fiduciary duty against the Church Defendants, and these claims are based upon her allegations that Evans engaged in a sexual relationship with her in the course of marital counseling.[2] In Malicki, we concluded that the First Amendment did not bar claims for negligent hiring and supervision because the claims constituted neutral principles of tort law that did not violate either the Free Exercise Clause or the Establishment Clause. Id. at 364 - 65. Consequently, we conclude that Doe's right to bring negligent hiring and supervision claims is not barred by the First Amendment.
As to the fiduciary duty claim, Doe also asserts that the Church Defendants breached a fiduciary duty when they failed to protect her from the known harm inflicted by Evans. The Fourth District rejected the contention that the breach of fiduciary duty claim was simply a disguise *374 for an impermissible clergy malpractice claim. See Evans, 718 So.2d at 291. We agree with the Fourth District that Doe's breach of fiduciary duty claim is not tantamount to a clergy malpractice claim.
This Court has characterized a fiduciary relationship in the following manner:
The relation and duties involved need not be legal; they may be moral, social, domestic or personal. If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. The origin of the confidence is immaterial.
Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 421 (1927) (emphasis added). A fiduciary relationship may be implied by law, and such relationships are "premised upon the specific factual situation surrounding the transaction and the relationship of the parties." Capital Bank v. MVB, Inc., 644 So.2d 515, 518 (Fla. 3d DCA 1994).
Under section 874 of the Restatement (Second) of Torts, Violation of Fiduciary Duty, "[o]ne standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." Thus, "[a] fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act.... [T]he liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation." Restatement (Second) of Torts § 874 cmt. b (1979). Moreover, "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." Id. at cmt. a. Florida courts have recognized a cause of action for breach of fiduciary duty. See generally Palafrugell Holdings, Inc. v. Cassel, 26 Fla. L. Weekly D201, ___ So.2d ___, 2001 WL 20824 (Fla. 3d DCA Jan.10, 2001); Atlantic Nat'l Bank v. Vest, 480 So.2d 1328 (Fla. 2d DCA 1985). Thus, in O'Keefe v. Orea, 731 So.2d 680, 686 (Fla. 1st DCA 1998), the First District concluded that a psychiatrist had a duty to warn the parents of a patient who attacked and killed his father of his potential for violent behavior based upon a fiduciary relationship between the psychiatrist and the parents.
In this case, there are two claims for breach of fiduciary duty: one against Evans arising directly from the counseling relationship and one against the Church Defendants arising from their failure to protect Doe from Evans after she entered the counseling relationship. In fact, the second amended complaint alleges that the Church Defendants were "made aware early in the counseling process that Evans was abusing his position of trust." Doe does not assert the violation of any tenets of the Episcopal faith as the basis for her breach of fiduciary duty cause of action.
The counselor-counselee relationship has been characterized as a fiduciary one. See Eckhardt v. Charter Hosp., 124 N.M. 549, 953 P.2d 722, 727 (Ct.App.1997) (citing MacDonald v. Clinger, 84 A.D.2d 482, 446 N.Y.S.2d 801, 805 (1982)). As the Colorado Supreme Court has explained, a clergy member who undertakes a counseling relationship creates a fiduciary duty "to engage in conduct designed to improve the [plaintiffs'] marital relationship. As a fiduciary, [the clergy member] was obligated not to engage in conduct which might harm [the plaintiffs' marital] relationship." Destefano v. Grabrian, 763 P.2d 275, 284 (Colo.1988). The Colorado Supreme Court also applied this fiduciary relationship to *375 the diocese supervising the clergy member who engaged in sexual relations with the parishioner he was counseling. See id. at 289; see also Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 430 (2d Cir.1999); Erickson v. Christenson, 99 Or.App. 104, 781 P.2d 383, 386 (1989).
Accordingly, we hold that when a church, through its clergy, holds itself out as qualified to engage in marital counseling and a counseling relationship arises, that relationship between the church and the counselee is one that may be characterized as fiduciary in nature. We thus stress that the liability in this case rests on the assertion of an abuse of a marital counseling relationship through an inappropriate sexual relationship.[3] Further, as to the relationships between Doe and Evans and between Doe and the Church Defendants, it is a question for the jury to determine whether a fiduciary relationship arose; the nature of that relationship; and whether as a result of the Church Defendants' conduct, there was a breach of the Church Defendants' duty as fiduciaries to Doe. See Palafrugell, 26 Fla. L. Weekly at D201, ___ So.2d at ___; Uvanile v. Denoff, 495 So.2d 1177, 1178-79 (Fla. 4th DCA 1986); Vest, 480 So.2d at 1333.
The words of the New Jersey Supreme Court in addressing an identical claim are particularly apt in light of the dissenting opinions in this case:
The dissent, nonetheless, would permit a clergyman to victimize a parishioner whose vulnerability has led the parishioner to seek refuge in pastoral counseling. In the final analysis, the dissent simply refuses to accept that pastoral counselors, like psychotherapists, may be liable for breach of a fiduciary relationship with a parishioner.
Ordinarily, consenting adults must bear the consequences of their conduct, including sexual conduct. In the sanctuary of the church, however, troubled parishioners should be able to seek pastoral counseling free from the fear that the counselors will sexually abuse them. Our decision does no more than extend to the defenseless the same protection that the dissent would extend to infants and incompetents.
F.G. v. MacDonell, 150 N.J. 550, 696 A.2d 697, 705 (1997) (citation omitted).
Having concluded that Doe's breach of fiduciary claim states a cognizable cause of action, we now address whether either the Free Exercise or the Establishment Clause would bar a breach of fiduciary duty claim against the Church Defendants in this case. In Evans, the Fourth District concluded that, as with the claim for negligent hiring and supervision, defining the fiduciary duty the Church Defendants owed to Doe "necessarily involves the secular court in church practices, doctrines, and belief." 718 So.2d at 293. The Fourth District explained that the Church *376 Defendants' policies concerning its employees "undoubtedly differ from the rules of another employer, and may require the nonsecular employer to respond differently when faced with such allegations." Id. Thus, the Fourth District ruled that determining whether the Church Defendants breached a fiduciary duty owed to Doe would improperly entangle the court in church law, policies, and practices. See id.
In Martinelli, the Second Circuit rejected a similar argument that the Free Exercise Clause barred a claim for breach of fiduciary duty between a church and a parishioner, explaining:
To the extent that the jury did consider religious teachings and tenets, moreover, it did so to determine not their validity but whether, as a matter of fact, [the plaintiff's] following of the teachings and belief in the tenets gave rise to a fiduciary relationship between [the plaintiff] and the Diocese. The First Amendment does not prevent courts from deciding secular civil disputes involving religious institutions when and for the reason that they require reference to religious matters....
... Where a person's beliefs are alleged to give rise to a special legal relationship between him and his church, we may be required to consider with other relevant evidence the nature of that person's beliefs in order properly to determine whether the asserted relationship in fact exists. In doing so, we judge nothing to be heresy, support no dogma, and acknowledge no beliefs or practices of any sect to be the law.
Martinelli, 196 F.3d at 431.
We agree with the reasoning of the courts that have determined that the evaluation of whether a fiduciary relationship arose and whether a religious organization breached this duty does not require an adjudication of religious doctrine or beliefs. See, e.g., Martinelli, 196 F.3d at 431-32; Destefano, 763 P.2d at 284. Thus, allowing Doe's claim to be adjudicated in a secular court neither infringes upon nor restricts the religious practices of the Church Defendants and thus does not constitute a Free Exercise Clause violation. See Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 533, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). Moreover, even assuming that assessing the Church Defendants' actions or inactions would have an incidental effect of burdening a particular religious practice, see Lukumi Babalu, 508 U.S. at 531, 113 S.Ct. 2217, Doe's breach of fiduciary duty claim is governed by neutral tort law principles of general application. See Smith v. O'Connell, 986 F.Supp. 73, 81 (D.R.I.1997).
Further, we hold that allowing Doe to bring a breach of fiduciary duty claim against the Church Defendants does not run afoul of the Establishment Clause. The imposition of liability based on a breach of fiduciary duty has a secular purpose and the primary effect of imposing liability under the circumstances of this case neither advances nor inhibits religion. As noted above, the court in this case is not being called upon to interpret ecclesiastical doctrine. Rather, the focus is on whether the Church Defendants had a fiduciary relationship with Doe giving rise to a duty and whether they breached this duty by failing to protect Doe from Evans. Moreover, the resolution of this dispute does not depend on "extensive inquiry by civil courts into religious law and polity," Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), or interpretation and resolution of religious doctrine. Thus, we foresee no excessive entanglement based on the allegations of Doe's amended complaint.
*377 Therefore, we conclude that the First Amendment does not bar consideration of the claims in this case. As we explained in Malicki, "[b]y holding that the First Amendment does not bar the court's consideration of the parishioners' allegations, we expressly do not pass on the merits of the underlying case." Op. at 365. Further, although for purposes of this opinion we have assumed that the romantic involvement was a sexual relationship, this opinion should not be read as determining the sufficiency of the underlying allegations of the operative complaint. On remand, the plaintiff should have the opportunity to amend the complaint to make more specific and definite the allegations of the underlying behavior complained of, and the Church Defendants should have the opportunity to attack the sufficiency of these allegations consistent with this opinion. Accordingly, we quash Evans and remand this case for further proceedings consistent with this opinion.
It is so ordered.
SHAW, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
QUINCE, J., concurs with an opinion, in which ANSTEAD, J., concurs.
WELLS, C.J., and HARDING, J., dissents with opinions.
QUINCE J., concurring.
I concur fully in the majority opinion and write only to address the dissent's discussions in this case concerning the sufficiency of the allegations of the second amended complaint and the complaint's use of the term "involved in a romantic manner," and to address my perception that the dissent's views in this case place the protection of religious institutions over the protection of innocent victims of sexual and other abuse.
The parties, and the Fourth District in its opinion, have treated this case at all times as if a viable cause of action was stated; the parties discussed and the courts ruled on whether the First Amendment prohibits Doe from suing the defendants. Indeed, the First Amendment issue is the only issue before us. Moreover, all the parties and the courts seem to understand what is meant by the term "involved in a romantic manner."
Nevertheless, in light of the dissent in this case and the concurring in result only opinion in Malicki, I feel it necessary to briefly clarify the state of this record. The defendants' motion to dismiss the second amended complaint sought to dismiss the entire second amended complaint on First Amendment grounds and sought to dismiss only Count III, alleging outrageous conduct, on the additional ground that it failed to state a cause of action. Although prior motions filed by the defendants also had requested a more definite statement, the motion filed in response to the second amended complaint did not. See generally Fla. R. Civ. P. 1.140(b) ("Any ground not stated shall be deemed to be waived except any ground showing that the court lacks jurisdiction of the subject matter may be made at any time."). Whether or not the second amended complaint states a cause of action is simply not the issue before this Court.
Further, although the second amended complaint did not contain specific details as to the nature of the "involved in a romantic manner" allegation, in this case it is a polite way of referring to a sexual relationship between Doe and Evans as described in more detail and made unequivocally clear by the parties' briefs. The defendants opined:
The only factual difference between the case at bar and a sexual relationship is a priest and his alleged employers are religious *378 entities. There is little doubt that were Father Evans any other member of society, he could not be liable for engaging in a consensual sexual relationship with the Petitioner, nor could his alleged employers be liable for breaching a fiduciary duty and/or negligently hiring, supervising or retaining him.
(Emphasis supplied.) The purpose of pleadings is to put the defendants on notice. In the context of this case, there is only one conclusion and that is that "involved in a romantic manner" is a euphemism for a sexual relationship.
As for the dichotomy between the protection of religious institutions and the protection of the victims of abuse, it appears to me that the dissent has overlooked at least two important considerations. First, as the discussion above and the majority opinion made clear, no institution, religious or otherwise, may be held responsible unless that institution is proven to be at fault under a cause of action recognized by our civil law. The burden of proving a recognized cause of action rests at all times with the claimants and alleged victims. We are simply denying immunity to those who may be found at fault. Second, and perhaps more important, the dissent overlooks the fact that all too often acts of sexual and other abuse are committed against especially vulnerable victims by those who occupy sensitive positions of trust or authority over them. In other words, it is often the case that both children and adults in need of emotional counseling are particularly vulnerable to abuse by those from whom they seek counseling; they often reveal their vulnerability and open their hearts and souls to those from whom they seek help.
It is only when positions of trust are seriously abused that the law recognizes a claim for the victim. In my view, these wrongs are too serious to grant a blanket immunity to the offender and those that place them in a position to do harm, even though they are aware of the offender's prior record or propensity for abuse. I do not believe the First Amendment requires such a result.
ANSTEAD, J., concurs.
WELLS, C.J., dissenting.
I respectfully dissent.
I approve of much of Judge Polen's reasoning in his well-written opinion for the Fourth District Court of Appeal. See Doe v. Evans, 718 So.2d 286 (Fla. 4th DCA 1998). Likewise, I agree with much of Justice Harding's well-reasoned dissents in this case and in Malicki v. Doe, 814 So.2d at 367-69 (Fla. 2002) (Harding, J., dissenting), except I would recognize the First Amendment bar exception stated in Doe v. Dorsey, 683 So.2d 614, 617 (Fla. 5th DCA 1996) (indicating that tort action would not be barred by the First Amendment where the complaint alleges tortious conduct which constituted a violation of criminal law). I explained the basis of my reasoning for this exception in my separate opinion in Malicki. See Malicki, at 365-66 (Wells, C.J., concurring in result only).
I would not, however, reach the First Amendment issue in this case because in my view the operative complaint does not state a cause of action based upon any tort which previously has been recognized under Florida law. I cannot agree with the majority or Justice Quince that we should overlook the cause of action analysis because neither the trial court nor the district court addressed the issue of whether the operative complaint failed to state a cause of action. Clearly, this analysis has *379 not been waived. See Fla. R. Civ. P. 1.140(h).[4]
It seems logically inescapable to me that before a court may determine whether a cause of action in tort is barred by the First Amendment a court must make the threshold decision that the allegations in the operative complaint assert ultimate facts sufficient to state a cause of action upon which there may be a recovery in tort. If the allegations in the operative complaint do not state a cause of action for a cognizable tort, then the issue of whether the First Amendment bars the suit is immaterial. Cf. Dorsey, 683 So.2d at 617 (noting that the issue of whether First Amendment bars suit need not be reached where the suit is time-barred by the statute of limitations).
Examining the First Amendment issue before examining procedural requirements would be logical only if the First Amendment precluded any suit against a religious organization or its agents. This must be so because if the First Amendment barred all suits, then there would be no need to examine the operative complaint for procedural bars, e.g., insufficient allegations in the operative complaint or a statute of limitations violation. As previously stated, however, I would recognize an exception to the bar of the First Amendment based upon allegations and proof of criminal sexual assault and battery. See Malicki, op. at 365-66 (Wells, C.J., concurring in result only); Dorsey, 683 So.2d at 617. Thus, I conclude that the initial inquiry a court must make when faced with this type of claim against a religious institution is whether there are ultimate facts pled that allege conduct which would come within the exception.
Accordingly, to begin my review of this case, I read the operative complaint.
What I found when I read the operative complaint was two-fold: First, I discovered that the operative complaint did not state a cause of action which would come within the First Amendment exception that I would recognize. See Malicki, op. at 366 (Wells, C.J., concurring in result only). Second, and more importantly, the operative complaint did not state a cause of action based upon any cognizable tort under Florida law. The majority demonstrates my concern at the beginning of its opinion when the majority asserts that the claim is based upon alleged "sexual misconduct." See id., op. at 361. "Sexual misconduct" is a phrase of inherent vagueness and has no meaning in Florida tort law.
Torts have defined elements, whether intentional or negligent. Ultimate facts must be pled to allege that the conduct in question consists of those elements which make the conduct actionable in tort. For example, an assault is "the apprehension of immediate harmful or offensive contact with the plaintiff's person, caused by acts intended to result in such contacts, or the apprehension of them, directed at the plaintiff or a third person[;]" a battery is *380 the "unpermitted, unprivileged contact[ ] with [the plaintiffs] person, caused by acts intended to result in such contact[ ] ... directed at the [plaintiffs person] or a third person." William L. Prosser, Handbook of the Law of Torts, §§ 9-10 (1941). In contrast, the phrase used in the operative complaint in this case, i.e., "romantic involvement," and the language used in the majority and concurring opinions, i.e., "sexual relationship" and "sexual misconduct," simply have no similarly defined legal meaning.
In the operative complaint in this case, Jane Doe alleges the following in her fiduciary duty count:
18. Each of the Defendants directly solicited Plaintiffs trust and confidence.
19. The pastoral counselor-counselee relationship between Defendant, EVANS, and the Plaintiff, JANE DOE, began approximately December 27, 1991 and continued into mid February of 1992.
20. During that period of time, the Defendant, EVANS, breached the duty alleged above to the Plaintiff by becoming involved with her in a romantic manner and in a way which made it impossible for him to adequately keep the Plaintiffs interest paramount.

21. The Defendants, HOLY REDEEMER, SCHOFIELD, and THE DIOCESE, were made aware early in the counseling process that the Defendant, EVANS, was abusing his position of trust.
22. Each of the Defendants breached a fiduciary duty to the Plaintiff.
(Emphasis added.) Doe adds in her count for negligent hiring:
27. The Defendants, THE DIOCESE, SCHOFIELD, and HOLY REDEEMER, were negligent in the hiring and/or supervision and/or retention of Defendant, EVANS, in that they failed to protect against reasonably foreseeable harm.
The complaint then seeks to recover for pain and suffering, mental anguish, and other damages. Importantly, there are no allegations that the alleged conduct resulted in any physical injury or that an intentional tort such as sexual battery occurred.[5]
With regard to Doe's count one, breach of fiduciary duty, initially I must point out that I can locate no Florida case which has based a personal injury recovery on the breach of a fiduciary duty. It is my understanding that breach of fiduciary duty is a concept stemming from a business or trust relationship having to do with property; whereas professional relationships, including that of counselor-counselee, fit within concepts of malpractice. The placing of these claims within malpractice concepts allows for an evaluation of the conduct allegations under the traditional elements of negligence, i.e., duty, breach of duty, causation, and damages. To accept the present allegations as stating a cause of action results in there being an entirely unknown tort cause of action. This presents many questions. For example, what is the standard for the fiduciary duty? How is the standard to be evaluated? If this were pled as a malpractice action, the standard would be what a reasonably prudent counselor would or would not do under the circumstances. Of course, likely what is here being avoided is that a malpractice standard could inject *381 church doctrine into the case which would result in the First Amendment bar.
With regard to Doe's count two, negligent hiring, it is axiomatic that a claim in tort based upon negligent hiring or retention is inextricably bound to a cognizable tort. See Texas Skaggs, Inc. v. Joannides, 372 So.2d 985, 987 (Fla. 2d DCA 1979). Judge Polen correctly makes this point in citing to Watson v. City of Hialeah, 552 So.2d 1146 (Fla. 3d DCA 1989). See Evans, 718 So.2d at 289. Thus, the analysis circles back to whether what is alleged as the underlying tort states a cause of action.
Though I fully acknowledge we have notice pleading in Florida, the specific allegation in paragraph 20 of the operative complaint, that two adults were "involved in a romantic manner," simply has no meaning in tort law. The reach of "romantic manner" is plainly uncertain. Does "romantic manner" refer to hugs, kisses, flirtation, or other more intimate physical sexual contact?
Use of phrases like "sexual relationship" and "sexual misconduct" in an attempt to narrow "romantic involvement" are likewise problematic because "sexual relationship" covers the entire spectrum of human interaction. Are there any sexual relationships which are not actionable? For instance, is a consensual sexual relationship between adults actionable? If there are sexual relationships which are not actionable, what are the elements of a sexual relationship which are actionable? The phrase sexual misconduct is completely ambiguous without stating the acts or omissions of which it consists.
I make these points because I believe it is essential for this Court to confront these types of questions prior to this Court approving tort claims that previously have gone unrecognized by Florida law. I do not agree that the dissents are choosing religious institutions over helpless victims. I view this case in a fundamentally different light despite the characterizations of the dissents. I conclude that the fundamental choice in this case is whether this Court will responsibly confront the complex questions which follow from making "romantic involvement," "sexual relationships," or "sexual misconduct" involving consenting adults actionable in tort or whether this Court will, without confronting the myriad of legal issues involved, impliedly recognize causes of action based upon such relationships by the use of broad, indefinite, and legally nonspecific language.
If we follow the latter course, I have a deep concern that the counseling services provided by religious organizations will be jeopardized. Without elements, definitions, or limits, causes of action can be asserted which are extremely costly to defend, even if a jury ultimately finds the actions are baseless. This is a concern for religious organizations because these organizations are where these counseling services are provided at affordable rates to those who otherwise would be unable to receive such services.
At this stage of the case, I do not view this case as involving the First Amendment. Rather, I simply view this case as involving a tort and pleading problem.
Therefore, I respectfully dissent.
HARDING, J., dissenting.
I dissent for the reasons I expressed in Malicki v. Doe, 814 So.2d 347 (Fla. 2002). While I recognize that the First Amendment does not shield a religious institution against all vicarious liability arising from the tortious actions of its employees, allowing a tort claim for negligent hiring and supervision or breach of fiduciary duty against the hierarchy of a religious institution *382 would necessarily require a secular court to impermissibly interpret the religious institution's law, policies, and practices and would amount to excessive entanglement of religion by the state; therefore, such a claim is barred by the First Amendment.
Furthermore, the majority quashes the lower court's decision in this case on the basis of a questionable extension of Malicki. Unlike the instant case, Malicki involves a child victim and the complaint included specific allegations of criminal sexual battery (e.g., "unlawfully fondled, molested, touched, abused, sexually assaulted, and/or battered"). Indeed, a large number of the cases relied on by the majority in supporting its decision in Malicki involve specific allegations of child abuse or criminal sexual assault.[6] Moreover, in reaching its conclusion in the instant case, the majority relies on a federal case where the complaint alleged a criminal sexual assault upon a minor. See Majority Op. at 376 (quoting Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409 (2d Cir.1999)). In this case, however, there is no allegation of criminal sexual assault against a minor or, for that matter, no specific allegation of sexual misconduct; therefore, it seems inappropriate to quash the district court's decision in the instant case based on decisions so clearly distinguishable on their facts.
Moreover, the majority assumes facts not alleged in the plaintiffs second amended complaint and mischaracterizes plaintiffs allegation as "sexual misconduct," an "inappropriate sexual relationship," or "engaging in a sexual relationship." Majority Op. at 371, 373, 375. Strictly speaking, however, the plaintiffs second amended complaint merely alleges the pastor's misdeed as "becoming involved with [the plaintiff] in a romantic manner." It is *383 totally inappropriate for this Court to assume or suggest facts not alleged in the complaint.[7]
Furthermore, the majority's reliance on F.G. v. MacDonell, 150 N.J. 550, 696 A.2d 697 (1997) is misplaced. In F.G., the plaintiff specifically alleged that the defendant "improperly induced her to engage in a sexual relationship." F.G., 696 A.2d at 702 (emphasis added). Therefore, contrary to the majority's assertion, F.G. does not address an "identical claim" to the one alleged here. The majority also quotes F.G. to support its conclusion, stating, "[T]roubled parishioners should be able to seek pastoral counseling free from the fear that counselors will sexually abuse them." Majority op. at 375. However, as discussed herein, there is nothing in plaintiff's second amended complaint that alleges any form of "sexual abuse."
I am troubled by the majority granting the plaintiff "opportunity to amend the complaint to make more specific and definite the allegations," particularly after suggesting what those allegations should be. By doing so, the majority grants relief which has not been requested and, thus, together with the assumptions it makes as to plaintiff's allegation, attempts to conform the case to reach the result it seeks to achieve.
For all of these reasons, I dissent. Instead, I would join the large number of jurisdictions which have concluded that allowing a tort claim for negligent hiring and supervision or breach of fiduciary duty against a religious organization violates the First Amendment of our Constitution and affirm the lower court's decision[8].
NOTES
[1] Evans did not join in the motion to dismiss and the claims against him remain pending in the trial court. See Evans, 718 So.2d at 287.
[2] Although the dissenting opinions contend that the operative complaint in this case fails to state a cause of action, the real attack on the complaint is on the vagueness of the term "romantic involvement" in that this term could cover a variety of potentially acceptable or unacceptable behavior. However, the Church Defendants have never raised the issue of whether "romantic involvement" is too vague a term either through a motion to dismiss or a motion for a more definite statement. In fact, although the second amended complaint in this case did not specify the precise nature of the "romantic involvement" that allegedly occurred in this case, all parties' briefs filed with this Court specifically refer to the involvement as a sexual relationship. Therefore, for purposes of this opinion, we have assumed, consistent with the parties' briefs, that the term "romantic involvement" refers to a sexual relationship.
[3] Commentators have explained the power imbalance between counselor and counselee. See Janice D. Villiers, Clergy Malpractice Revisited: Liability for Sexual Misconduct in the Counseling Relationship, 74 Denv. L.Rev. 1, 46 (1996) (listing "six identifiable factors" that aggravate the imbalance of power between the parties in the counseling relationship, including "the counselee's initial vulnerability; the counselor's control of the environment; the confidentiality of the relationship; the leverage gained from unilateral self-revelation; the spiritual superiority or worthiness associated with the clergy; and finally, the counselee's desire to achieve salvation"); Eduardo Cruz, Comment, When the Shepherd Preys on the Flock: Clergy Sexual Exploitation and the Search for Solutions, 19 Fla. St. U.L.Rev. 499, 501 (1991) (explaining that "[s]exual relationships between clergy and parishioners do not fall within the category of voluntary relationships between consenting adults").
[4] Florida Rule of Civil Procedure 1.140(h) provides:

(1) A party waives all defenses and objections that the party does not present either by motion under subdivisions (b), (e), or (f) of this rule, or if the party has made no motion, in a responsive pleading except as provided in subdivision (h)(2).
(2) The defenses of failure to state a cause of action or a legal defense or to join an indispensable party may be raised by motion for judgment on the pleadings or at the trial on the merits in addition to being raised either in a motion under subdivision (b) or in the answer or reply. The defense of lack of jurisdiction of the subject matter may be raised at any time.
(Emphasis added.)
[5] There was a count which petitioner labeled "Outrageous Conduct," but that count was dismissed by the trial court. The Fourth District Court of Appeal affirmed the trial court's dismissal. See Doe v. Evans, 718 So.2d at 294-95. The petitioner did not pursue that count in this Court.
[6] See Smith v. O'Connell, 986 F.Supp. 73, 80 (D.R.I.1997) (holding that First Amendment did not bar minor's claim of sexual molestation against priest and church for negligent supervision); Nutt v. Norwich Roman Catholic Diocese, 921 F.Supp. 66 (D.Conn.1995) (holding that Free Exercise Clause does not bar claim for negligent employment based upon alleged sexual abuse of altar boys by priest); Isely v. Capuchin Province, 880 F.Supp. 1138, 1151 (E.D.Mich.1995) (holding no First Amendment bar to claim of negligent supervision by student sexual abuse victim, but First Amendment does bar claim of negligent hiring); Bear Valley Church of Christ v. DeBose, 928 P.2d 1315, 1323 (Colo.1996) (holding First Amendment not a bar to child's various tort claims against pastor); Doe v. Malicki, 771 So.2d 545, 548 (Fla. 3d DCA 2000) (holding child and adult's claims of negligent hiring and supervision based on sexual assault by priest not barred by First Amendment); Konkle v. Henson, 672 N.E.2d 450, 456 (Ind.Ct.App.1996) (holding that child victim of sexual molestation could bring claim of negligent hiring and supervision against church); Mrozka v. Archdiocese of St. Paul & Minneapolis, 482 N.W.2d 806, 812 (Minn.Ct. App.1992) (holding that First Amendment is not violated by the imposition of punitive damages against church based upon priest's sexual abuse of child); Kenneth R. v. Roman Catholic Diocese, 229 A.D.2d 159, 654 N.Y.S.2d 791, 795-96 (N.Y.App.Div.1997) (holding that child's negligent supervision and retention claims against diocese not barred by First Amendment); Erickson v. Christenson, 99 Or.App. 104, 781 P.2d 383, 386 (1989) (holding that First Amendment did not bar child's tort claims against church for actions of pastor who engaged in sexual misconduct during course of counseling relationship); C.J.C. v. Corporation of the Catholic Bishop of Yakima, 138 Wash.2d 699, 985 P.2d 262, 277 (1999) (holding that First Amendment did not bar minor sexual abuse victim from bringing tort claims against priest and church); see also Amato v. Greenquist, 287 Ill.App.3d 921, 223 Ill.Dec. 261, 679 N.E.2d 446, 450, 454 (1997) (recognizing that negligent supervision claim may not be barred by First Amendment, but holding only that Illinois does not recognize claim of breach of fiduciary duty based upon relationship between cleric and parishioner because religion is the foundation of the claim).
[7] See Lewis v. Barnett Bank, 604 So.2d 937 (Fla. 3d DCA 1992) ("On a motion to dismiss, the trial court is necessarily confined to the well-pled facts alleged in the four corners of the complaint...."); see also Jordan v. Griley, 667 So.2d 493 (Fla. 3d DCA 1996).
[8] Federal courts: Dausch v. Rykse, 52 F.3d 1425, 1429 (7th Cir.1994) (holding that First Amendment barred parishioner's negligent hiring and supervision and breach of fiduciary duty claims against pastor and church for sexual contact that occurred between pastor and parishioner during the course of a counseling relationship); Ayon v. Gourley, 47 F.Supp.2d 1246, 1250 (D.Colo.1998) (holding that First Amendment barred negligent hiring and supervision claim against archdiocese for alleged sexual abuse of minor by priest), aff'd on other grounds, 185 F.3d 873 (10th Cir. 1999) (unpublished decision); Schmidt v. Bishop, 779 F.Supp. 321, 325-26 (S.D.N.Y. 1991) (holding that First Amendment barred child's breach of fiduciary duty claim against pastor).

State courts: Louisiana: Roppolo v. Moore, 644 So.2d 206, 207 (La.Ct.App.1994) (holding that negligent claims against clergy member and religious organization for alleged sexual misconduct during the course of a counseling relationship were tantamount to impermissible clergy malpractice claim); Maine: Bryan R. v. Watchtower Bible & Tract Society, 738 A.2d 839, 848 (Me. 1999) (stating in dicta that "[a]llowing a secular court or jury to determine whether a church and its clergy have sufficiently disciplined, sanctioned, or counseled a church member would insert the State into church matters in a fashion wholly forbidden by the Free Exercise Clause of the First Amendment"); Swanson v. Roman Catholic Bishop of Portland, 692 A.2d 441, 444 (Me.1997) (holding that First Amendment barred negligent supervision claim against a church regarding sexual relationship between adult parishioner and priest during the course of a marital counseling); Michigan: Teadt v. Lutheran Church Missouri Synod, 237 Mich. App. 567, 603 N.W.2d 816, 822-23 (1999) (holding that claim of breach of fiduciary duty against pastor for sexual relationship with parishioner during the course of pastoral counseling was tantamount to impermissible clergy malpractice claim); Minnesota: Mulinix v. Mulinix, No. CZ97-297, 1997 WL 585775, *6 (Minn.Ct.App. Sept.22, 1997) (holding that negligent retention and supervision claims based upon a pastor's sexual contact with parishioners was barred by the First Amendment); Missouri: Gibson v. Brewer, 952 S.W.2d 239, 246-48 (Mo.1997) (holding that First Amendment barred child victim of sexual abuse by priest from bringing negligent hiring and supervision claims, but that First Amendment would not be violated by adjudication of claim of intentional failure to supervise priest); H.R.B. v. J.L.G., 913 S.W.2d 92, 98-99 (Mo.Ct.App.1995) (holding that First Amendment barred child victim of sexual abuse by priest from bringing breach of fiduciary duty claim against priest, church official, and church); Nebraska: Schieffer v. Catholic Archdiocese of Omaha, 244 Neb. 715, 508 N.W.2d 907, 911-13 (1993) (holding that First Amendment barred adult parishioner who engaged in sexual relationship with priest during the course of pastoral counseling from bringing intentional infliction of emotional distress, negligence, and breach of fiduciary duty claims); Texas: Hawkins v. Trinity Baptist Church, 30 S.W.3d 446, 453 (Texas Ct.App.2000) (declining to recognize breach of fiduciary duty claim against pastor for sexual relationship with adult parishioner during the course of marital counseling because of "concerns towards treading upon the Free Exercise Clause"); Wisconsin: L.L.N. v. Clauder, 209 Wis.2d 674, 563 N.W.2d 434, 445 (1997) (holding that First Amendment barred consideration of negligent supervision claim against diocese for sexual relationship between adult parishioner and priest while the priest was counseling the parishioner in his position as a chaplain); Pritzlaff v. Archdiocese of Milwaukee, 194 Wis.2d 302, 533 N.W.2d 780, 790 (1995) (same).